[Civ. No. 30851. First Dist., Div. One. Oct. 24, 1972.]

ERIC STRATTON-KING, Plaintiff and Appellant, v.
ROBERT MARTIN, as Director, etc., Defendant and Respondent.

**COUNSEL**

Michael R. Ashburne, Alan S. Koenig and Robert P. Mason for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Asher Rubin, Deputy Attorney General, for Defendant and Respondent.

## OPINION

KONGSGAARD, J.*—Petitioner appeals from a judgment denying a peremptory writ of mandate.

### Record

On July 3, 1969, petitioner-appellant, Stratton-King, filed with the Alameda County Welfare Department a written application for aid to the permanently and totally disabled (ATD) pursuant to Welfare and Institutions Code sections 11000-11158 and 13500 et seq. and the regulations promulgated thereunder. This application was denied on October 3, 1969, on the grounds a State Medical Review team determined that the claimant's impairments were not severe enough to qualify for ATD.

On December 18, 1969, petitioner filed a request for a fair hearing pursuant to Welfare and Institutions Code section 10950 et seq., contesting denial of his application for ATD benefits, and this hearing was held on January 16, 1970. The transcript of that hearing was introduced in evidence before the lower court; the relevant facts from this transcript will be set forth hereafter.

On February 18, 1970, a proposed decision was rendered by a referee employed by the State Department of Social Welfare (SDSW) denying petitioner's claims for benefits, and that decision was adopted by respondent pursuant to Welfare and Institutions Code section 10959 on March 12, 1970. The decision concluded that petitioner's impairments did not meet the definition of a qualifying disability under Welfare and Institutions Code section 13501 and the Manual of Policies and Procedures—Public Social Services (MPP-PSS) sections 42-203 and 205. This decision was based upon findings that the preponderance of evidence did not establish a significant physical impairment nor impairments permanent in nature since they were medically remediable.

Petitioner claimed that these findings were not supported by the evidence, and thereafter filed a petition for a writ of mandate in the Alameda County Superior Court asking that respondent, Director of the California State Department of Social Welfare, be ordered to set aside his decision denying petitioner benefits under the aid to the permanently and totally disabled ATD program. After a hearing on the petition the trial judge discharged the alternative writ of mandate and denied the peremptory writ. This appeal follows.

The record indicates that in February of 1967 while appellant was lifting

*Assigned by the Chairman of the Judicial Council.

weights, he suffered a back injury which caused him to terminate his employment as a research assistant in July of 1967. Appellant was examined by several doctors concerning his back problem, and their findings are dealt with hereafter.

Appellant's contentions on appeal:

I. Certain medical reports were improperly considered by the referee.

II. There was no substantial evidence to support respondent's findings.

III. A finding of medical remediability will not support a denial of ATD benefits when petitioner is unable to obtain medical remedies without ATD benefits.

I

Appellant contends that of the six medical reports found in the record, four were improperly considered by the hearing referee because the reports were based on examinations made more than three months prior to his application for aid in July of 1969.

Public Social Service Regulation section 42-211-1 states in relevant part: "To be valid, medical reports shall be based on medical examinations completed no earlier than three months prior to date of application, except when another examination would be a hardship for the individual and the ATD Review Section determines that the existing report is reasonably recent and the condition reported is not likely to have improved."

The six medical reports placed on record consisted of the following: (1) T. W. Wilkins, M.D., a general practitioner, dated January 9, 1968; (2) W. B. Sheppard, M.D., an orthopedist, dated January 22, 1968; (3) D. N. Browning, M.D., an orthopedist, dated June 7, 1968; (4) Highland Clinic, dated July 16, 1969; and (5) A. Hambly, M.D., internal medicine, dated July 10, 1969; and (6) Frederick F. Boyes, M.D., psychiatrist, dated October 28, 1969.

The basis for appellant's objection is that under Public Social Services Regulation section 42-211-1 no medical report is valid unless based on medical examinations made no earlier than three months prior to the date of application. Since the application here was made on July 3, 1969, only the medical report of A. Hambly, M.D. dated July 10, 1969,

and the medical summary of Highland Clinic, dated July 16, 1969, would come within this portion of the regulation.[1]

This objection overlooks the second portion of the regulation which creates an exception to the three-month rule, "when another examination would be a hardship for the individual and the ATD Review Section determines that the existing report is reasonably recent and the condition reported is not likely to have improved."

Appellant attempts to justify his refusal to submit to an additional current examination on the grounds of the "obvious pain that he suffered getting to and from such examinations . . . ." Such a factor would justify reliance by the review team on existing reports it deemed "reasonably recent" if it determined the condition was not likely to have improved.

If an applicant refuses to submit to a current medical examination, it would be unreasonable to interpret the regulation in question as excluding available and fairly current medical reports from consideration to the extent they are relevant. This would permit an applicant to submit favorable current reports from his doctors and then refuse to submit to an impartial examination. Any decision contrary to his position would then fall for lack of substantial evidence to support it. Such a decision would place the ATD examination, hearing, and review system in the sole hands of the applicant; such a result was not the intent of the regulation. Under the circumstances the referee properly considered all six available medical reports.

## II

■ We have reviewed the six medical reports and conclude there is sufficient evidence in them to support the findings of no total and permanent physical and/or mental disabilities; moreover, we also conclude there is sufficient evidence in the uncontested reports.

■ The correct standard of review for the lower court in this administrative mandamus proceeding was to examine the record to see if there was substantial evidence in support of the director's decision. (*Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77, 86 [88 Cal.Rptr. 907, 43 A.L.R.3d 537]; *County of Contra Costa* v. *Social Welfare Board* (1962) 199 Cal. App.2d 468, 473 [18 Cal.Rptr. 573]; see also Welf. & Inst. Code, § 10962 and Code Civ. Proc., § 1094.5.)[2] The director's decision was to the effect

[1]The report of Dr. Boyes, psychiatrist, was dated October 28, 1969, which was subsequent to the decision on the matter by the review team dated September 3, 1969, but prior to the referee's hearing.

[2]Neither party has contended that the lower court should have reweighed the evidence under the decision of *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr.

that appellant did not have a permanent and total disability within Public Social Services Regulation section 42-203 et seq. which read as follows:

## "42-203 DEFINITION OF PERMANENT AND TOTAL DISABILITY

### .1 General Requirement

"The applicant shall have a major medically verifiable physical, mental or emotional impairment or combination of impairments. These impairments shall be permanent and total and substantially prevent him from engaging in a useful occupation within his competence, such as gainful employment or homemaking. A useful occupation may be seasonal if performed regularly each year."

### "42-302.21 Permanent Disability

"For the disability to be considered permanent, the impairment(s) of major importance must be expected to continue throughout the lifetime of the individual; that is: (1) likely to be of a long continued or indefinite duration or in a terminal state; and (2) unlikely to improve through any known and generally accepted medical treatment or be diminished through such treatment to the extent that it ceases to be of major importance, even though partial improvement may be expected.

"The fact that vocational rehabilitation or work training is or may be a possibility for the applicant does not preclude a finding of permanent disability."

### "42-203.51 Two or More Impairments

"A person may have two or more impairments, neither of which alone may be severe enough to qualify him, but the combined impairments are evaluated by the ATD Review Teams in light of their combined effect upon the person's ability to engage in a useful occupation."

▓▓▓ In the medical reports Dr. Wilkins stated appellant was "somewhat improved" and recommended further treatment; Dr. Sheppard noted there was no basis for making a definite diagnosis and observed the patient could do sedentary work; Dr. Browning could see "no reason . . . for disability"; The Highland Clinic report noted physical examination was nor-

234, 481 P.2d 242], and we agree in that no fundamental, vested right is involved here. (*Bixby* at pp. 144-147; *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915-916 [80 Cal.Rptr. 89, 458 P.2d 33]; *Toczauer* v. *State Bd. of Registration* (1971) 20 Cal.App.3d 1067, 1069-1070 [98 Cal.Rptr. 211].)

mal except for pain in back. The two reports that were most favorable to petitioner below and upon which he relies most heavily on appeal were from Dr. Hambly and Dr. Boyle. Dr. Hambly's report indicated the petitioner's lesion was moderately severe and probably static and prevented hard labor or housework. Dr. Boyle, the psychiatrist, reported that appellant's mental condition would continue to aggravate the injury and prolong his disability probably the rest of his life. However, both Drs. Hambly and Boyle stressed the need of therapy and treatment and stated that the disability would remain without adequate therapy and treatment. Thus, it was proper to infer that such therapy and treatment would alleviate or lessen the petitioner's physical disability. In any event, the reports of Drs. Hambly and Boyle created no more than a conflict in the evidence.

## III

■  Appellant's final contention is somewhat confusing but it appears to us he is arguing that even if his impairments are medically remediable, such a finding may not support a decision to deny ATD in this case where the only practical method he had to obtain the necessary medical care was through the ATD program and its benefits. Appellant also suggests that he was effectively prohibited from obtaining the remedial treatment because it was unavailable due to the pain he incurred while travelling, his poverty, and his location away from the treatment center.

Petitioner's position, stripped of its gloss, is simply that a condition medically remediable should be deemed "irremediable" for ATD purposes when there are certain social, economic, geographical or otherwise practical factors which make the medical treatment unavailable. Strong reliance is placed by appellant on the case of *Hoover* v. *Celebrezze* (W.D.N.C. 1964) 235 F.Supp. 147 at page 150, with its language to the effect that "[i]f claimant consents to surgery but cannot get it because he is unable to finance it, his condition is not 'remediable' within the meaning of the Act." We first note that *Hoover* involved a denial of Social Security benefits and not ATD benefits. Moreover, we note that here the evidence as to whether or not appellant was precluded for practical reasons from seeking therapy was in conflict. Petitioner claimed that Highland did not offer the therapy he needed, but there was testimony to the contrary. He also claimed the reason he had no therapy was because he had no money, but there was evidence that some services were financially available to him at Highland.

Additionally, there was evidence which would indicate that the reason the disability could not be remedied was because the petitioner simply

chose for purely personal reasons not to avail himself of it. He testified that he had an aversion to medication and did not want to travel too far for therapy because he self-diagnosed that the harm from such a trip would outweigh the benefits. In light of this evidence, it cannot be contended that the therapy was unavailable for an economic, social, financial or otherwise practical reason.

Even assuming that the record contained a showing that the remedy was unavailable for practical reasons, or was at least silent on this point, we have concluded that it was proper to declare the disability remediable in the sense of Public Social Services Regulation section 42-203 et seq. Public Social Services Regulation section 42-203.21 defines permanent disability as one "unlikely to improve through any known and generally accepted medical treatment or be diminished through such treatment. . . ." The regulation clearly does not embrace disabilities which are unavailable for financial, geographical, or social reasons but rather only those not medically available.

Arguably a regulation which is interpreted as denying ATD benefits to an indigent on the grounds that his condition is medically remediable, when in fact it cannot be remedied *solely* because of his indigency, might create some constitutional difficulties. As indicated earlier, however, this is not a case in which the remedies are unavailable solely because of appellant's indigency. In addition, no constitutional defect is argued here, rather the claim is simply that respondent's interpretation of Public Social Services Regulation 42-203.21 is unacceptable, irrational, inhumane, and illogical.

We do not agree with these claims. It seems perfectly logical, acceptable and rational to declare that only those defects for which there are no existing medical remedies are deemed irremediable for purposes of ATD benefits. Any inhumaneness created by such a declaration is alleviated by the existence of various programs and benefits whose purpose it is to remedy the various disabling financial, social or geographical impairments which one such as petitioner might suffer. We find no authority for holding that a finding of medical remediability is insufficient to justify a conclusion that ATD benefits may be denied in the face of a claim that the defects are, in fact, irremediable because of nonmedical factors which supposedly preclude one from availing himself of the remedies.

For the reasons stated there was substantial evidence to support the

various findings of respondent, and it was proper for respondent to conclude that there was no medical irremediability under the regulations.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.