[Civ. No. 37450. First Dist., Div. Two. June 2, 1976.]

FREDERICK MILLEN, Plaintiff and Appellant, v.
DAVID B. SWOAP, as Director, etc., Defendant and Respondent.

## COUNSEL

Orrick, Herrington, Rowley & Sutcliffe, James R. Madison, Steven A. Brick and Kandis Scott for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and Daniel Johnson, Jr., Deputy Attorney General, for Defendant and Respondent.

## OPINION

THE COURT.*—Frederick Millen (hereafter petitioner) appeals from the refusal of the trial court to overturn the decision made by the Director of the State Department of Social Welfare in 1973 (hereafter Director) denying petitioner's application for aid for the needy disabled.

██ Petitioner's first contention is that the Director lacked power to decide the case at the time of his decision. After his application had been denied, petitioner demanded and received a fair hearing. On July 13, 1973, the referee issued a proposed decision in favor of granting the petitioner's application. On November 23, 1973, the Director issued his decision denying aid.

Prior to the 1974 amendment, Welfare and Institutions Code section 10959 provided that: "Within 30 days after receiving a copy of the referee's proposed decision, the director may adopt the decision in its entirety; decide the matter himself on the record, including the transcript, with or without taking additional evidence; or order a rehearing to be conducted by himself, the administrative adviser of the department or another referee in behalf of the director. If the director

---

*Before Taylor, P. J., Kane, J., and Rouse, J.

decides the matter, a copy of his decision shall be served on the applicant or recipient and on the affected county, and, if his decision differs materially from the proposed decision of the referee, a copy of that proposed decision shall also be served on the applicant or recipient and on the affected county. If a rehearing is ordered, it shall be conducted in the same manner and within the same time limits specified for the original hearing." Since the Director failed to act within 30 days of receiving a copy of the proposed decision, petitioner contends that the Director no longer had authority to change the referee's decision.

This contention was dealt with in the case of *Henderling* v. *Carleson* (1974) 36 Cal.App.3d 561 [111 Cal.Rptr. 612], hg. den. The court held that the 30-day limit was mandatory. However, it concluded that the Director maintained power to decide a case even if he failed to comply with the mandatory time limit since the Director and not the referee had to make the final decision.

We agree with that decision. The applicant and the taxpayers were entitled to a final decision by the Director. The Director's tardiness is no reason for depriving either party of the right to such a decision.

Petitioner claims that the *Henderling* decision should be disapproved because of an amendment to section 10959 in 1974. Under the amended section, the failure of the Director to act within 30 days is deemed an affirmation of the referee's proposed decision. The Director's decision in the case at bench was issued well before the effective date of the amendment. We do not feel that the amendment requires disapproval of the *Henderling* decision. The legislative intent in amending section 10959 is at best weak evidence of the legislative intent in 1965 when section 10959 was added to the Welfare and Institutions Code. Moreover, even under the amended version, the referee does not have power to make final decisions. Failure to act within 30 days is deemed an affirmance of the referee's proposed decision by the Director.

■ Petitioner next contends that medical examinations conducted more than six months prior to the fair hearing should be given little or no weight. This contention is based on Department of Social Welfare regulation number 41-333 which provides that "[a] person who is dissatisfied with the disability determination has the right to request a fair hearing. If the claimant has not been examined by a medical specialist (board-certified or board-eligible) in the area of the claimant's major disability within six months of the day the request for fair hearing

is filed, the county shall refer the claimant to such specialist immediately upon notification from the SDSW that the request for fair hearing has been filed and shall submit the specialist's report at least fifteen days before the hearing."

The language of the regulation does not support the petitioner's contention. The fact that the department wants to update its medical information does not mean that older reports should be given little weight. A decision in petitioner's favor might entitle him to benefits retroactively to the date of his application. Examinations which took place shortly after the date of application are relevant and the weight to be given to these reports is a matter within the discretion of the trier of fact.

■ Petitioner next contends that a different standard for judicial review applies in welfare cases where the referee has ruled in favor of the petitioner's application prior to the denial of the application by the Director. He asks this court to adopt the rule set forth in *Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274 [113 Cal.Rptr. 162, 520 P.2d 978]. In that case, the Supreme Court stated: "When a referee's finding of compensable injury is supported by solid, credible evidence, it is to be accorded great weight by the Board and should be rejected only on the basis of contrary evidence of considerable substantiality. (*Garza* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 312, 318-319; *Greenberg* v. *Workmen's Comp. Appeals Bd.* (1974) 37 Cal.App.3d 792, 798-799 [112 Cal.Rptr. 626].)" (*Id.,* at p. 281.)

However, judicial review of the Director's decision is controlled by Code of Civil Procedure, section 1094.5, subdivision (c), which provided that: "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and *in all other cases* abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Italics added.)

■ Although the independent judgment standard of review will now be used in mandamus actions brought to annul a decision *terminating* welfare assistance (*Harlow* v. *Carleson* (1976) 16 Cal.3d 731 [129 Cal.Rptr. 298, 548 P.2d 698]; *Le Blanc* v. *Swoap* (1976) 16 Cal.3d 741 [129 Cal.Rptr. 304, 548 P.2d 704]), the independent judgment standard is not

used to review the denial of *applications*. Therefore, the standard of review is whether or not the decision is supported by substantial evidence in the light of the whole record.

Since the *Lamb* rule is based on *In re Branch* (1969) 70 Cal.2d 200, 203, footnote 1 [74 Cal.Rptr. 238, 449 P.2d 174] (see *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 318-319 [90 Cal.Rptr. 355, 475 P.2d 451]) which deals with referees' decisions in habeas corpus cases, we do not feel that the Supreme Court intended to limit the *Lamb* rule to compensation cases. However, the rule of the *Lamb* case can be harmonized with the standard of review mandated by Code of Civil Procedure, section 1094.5, subdivision (c). *In re Branch, supra,* does not establish a new standard of review but provides that the decision of the referee is entitled to great weight if supported by ample credible evidence or substantial evidence.

In *Rogers* v. *Carleson* (1973) 30 Cal.App.3d 54, 62 [106 Cal.Rptr. 140], the appellate court dealt with the standard of review in welfare cases where the Director is dissatisfied with the referee's decision. The court quoted from *Universal Camera Corp.* v. *Labor Bd.* (1951) 340 U.S. 474 [95 L.Ed. 456, 71 S.Ct. 456], in which the United States Supreme Court wrote: "We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is 'substantial.' " (At pp. 496-497 [95 L.Ed. at p. 472].)

We feel that this flexible standard for determining the weight to be given the referee's decision complies with the *Lamb* rule while preserving the "substantial evidence in the light of the whole record" test mandated by Code of Civil Procedure section 1094.5, subdivision (c).

■ We next determine whether the Director's decision is supported by substantial evidence in the light of the whole record. The record consists of the reports of two psychiatrists, a clinical psychologist and a specialist in internal medicine, along with the transcript of the fair hearing and the decision of the referee.

Dr. Breall conducted a physical examination which revealed no physical problems. His opinion was that the petitioner's mental problems were a "put on" but he suggested further psychiatric study. As a physician, his opinion, based on personal observation, is entitled to be considered, but since he is not a psychiatrist it cannot be given great weight.

Dr. Johnson, a board-eligible psychiatrist, wrote, "Generally his thoughts were coherent, there was no indication of thought disorder or major affective disturbance."

Dr. Katz, a clinical psychologist, thought petitioner was truly psychotic but he was far from certain. His report contained many references to his suspicion that petitioner might be pretending to be psychotic.

Dr. Gabby, a psychiatrist, noted hallucinations about talking to Jesus and social isolation. He concluded that petitioner was suffering from a "chronic paranoid schizophrenic reaction. . . ." His prognosis was "extremely guarded." At the hearing, petitioner's testimony about Jesus was consistent with what he had told Dr. Gabby.

Credibility judgments based on the referee's observations could not have played a very large role in her proposed decision. The petitioner appeared at the fair hearing and was questioned but the doctors' evidence was presented by way of written reports. Since these reports were available to the Director, the referee's decision is entitled to some but not great weight.

In the light of the whole record, we conclude that there is substantial evidence to support the Director's decision that the petitioner did not have a major mental impairment verified by medical findings which appeared reasonably certain to continue throughout his lifetime without substantial improvement and which prevented him from engaging in useful occupations within his competence. (Welf. & Inst. Code, § 13501, repealed effective Jan. 1, 1974.) Dr. Johnson's finding of no major mental

impairment remains substantial evidence even in the light of Dr. Gabby's contrary finding, Dr. Katz's tentative opinion that petitioner was truly psychotic and the referee's evaluation of petitioner's credibility.

The judgment is affirmed.