[L.A. No. 31453. Apr. 8, 1982.]

HELENE FRINK, Plaintiff and Appellant, v.
GERALD PROD, as Director, etc., Defendant and Respondent.

COUNSEL

John E. McDermott, Mary S. Burdick, Richard A. Rothschild, Robert F. Tardiff, Jr., and Paul Ashby for Plaintiff and Appellant.

George Deukmejian, Attorney General, Thomas E. Warriner, Anne S. Pressman and Louis Verdugo, Jr., for Defendant and Respondent.

OPINION

**BROUSSARD, J.**—Helene Frink petitioned for writ of mandate to vacate an administrative decision denying benefits under the aid to the totally disabled program (ATD). The superior court judgment states that while "the weight of the evidence was in petitioner's favor, there was substantial evidence in the administrative record to support the respondent's decision." Relief was denied. On this appeal, petitioner contends that the trial court should have exercised its independent judgment on the evidence rather than apply the substantial evidence rule.

Petitioner's application for benefits was denied in April 1973. She sought a hearing. At the time of the hearing, she was a 53-year-old married woman residing with her husband. She claimed that she was totally and permanently disabled based on back, leg, heart, hand, and psychological impairments. There was evidence that her conditions were not disabling and that they were not permanent. There was also con-

flicting evidence. A referee for the then Department of Social Welfare concluded that her condition was not permanent, and the director adopted the decision. Rehearing was denied in April 1974. Petitioner filed this mandamus proceeding but did not bring it on for trial until late 1979.[1]

In her points and authorities in support of the petition for writ of mandate, petitioner conceded that the substantial evidence test was applicable. The trial judge recognized that the authorities had established that the substantial evidence test was the proper standard of review but stated that he believed that, should this court reconsider, we would find independent judgment was the proper standard. He concluded that, while the weight of the evidence was contrary to the administrative decision, the decision was supported by substantial evidence.

## STANDING

■ Preliminarily, it is urged that petitioner may not raise the issue of appropriate standard of review because she conceded that the substantial evidence rule was applicable at trial. Ordinarily, a party may not change the theory of his case for the first time on appeal. (*Panopulous* v. *Maderis* (1956) 47 Cal.2d 337, 340 [303 P.2d 738].) However, parties have been permitted to change their theory on appeal where the issue is purely a question of law presented on undisputed facts. (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) In addition, consideration of points not raised below also may be permitted when important issues of public policy are involved. (*Hale* v. *Morgan, supra*, 22 Cal.3d 388, 394.)

In the instant case, appellate rulings, as we shall see, required application of the substantial evidence rule, and the trial court would have exceeded its jurisdiction had it refused to follow the controlling authorities. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 454 [20 Cal.Rptr. 321, 369 P.2d 937].) The case was submitted on the

[1]The ATD statutes, former section 13500 of the Welfare and Institutions Code, were repealed effective December 5, 1973. (Stats. 1973, ch. 1216, § 55, p. 2923.) The petition for writ of mandate alleges that petitioner has been found disabled under the meaning of the Social Security Act. Although it does not appear from the record or briefs, she apparently has been receiving federal benefits and state supplementary benefits. (See Welf. & Inst. Code, § 1200 et seq.)

basis of the administrative record, and it is not claimed that additional evidence was available to the parties. (Code Civ. Proc., § 1094.5, subd. (e).) The superior court anticipated the issue of appropriate standard of review and made determinations on the basis of both substantial evidence and independent judgment standards. In the circumstances, our consideration of the appropriate standard of superior court review of the administrative decision will not result in unfairness to the trial court or the parties (see 6 Witkin, Cal. Procedure (2d ed. 1971) p. 4265), and is in furtherance of the policy of permitting consideration of important issues of public policy. Petitioner's concession of applicability of the substantial evidence rule—a rule the trial court was required to apply in any event—does not preclude consideration of the appropriate standard of review.

CONTENTS

In administrative mandamus actions to review decisions *terminating* welfare assistance, the trial court exercises its independent judgment on the evidence. (*Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 734 et seq. [129 Cal.Rptr. 298, 548 P.2d 698].) However, administrative determinations of *applications* for welfare benefits traditionally have been reviewed under the substantial evidence rule. (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 676 [131 Cal.Rptr. 789, 552 P.2d 749]; *Bertch* v. *Social Welfare Dept.* (1955) 45 Cal.2d 524, 529 [289 P.2d 485]; *Ferreira* v. *Swoap* (1976) 62 Cal.App.3d 875, 881 [133 Cal.Rptr. 449]; *Millen* v. *Swoap* (1976) 58 Cal.App.3d 943, 947-948 [130 Cal.Rptr. 387]; *Repko* v. *Carleson* (1975) 48 Cal.App.3d 249, 265-266 [122 Cal.Rptr. 29]; *Henderling* v. *Carleson* (1974) 36 Cal.App.3d 561, 567 [111 Cal.Rptr. 612]; *County of Madera* v. *Carleson* (1973) 32 Cal.App.3d 764, 767 [108 Cal.Rptr. 515]; *Taylor* v. *Martin* (1972) 28 Cal.App.3d 1057, 1059 [105 Cal.Rptr. 211]; *Stratton-King* v. *Martin* (1972) 28 Cal. App.3d 686, 690 [104 Cal.Rptr. 916]; *County of Contra Costa* v. *Social Welfare Board* (1962) 199 Cal.App.2d 468, 473 [18 Cal.Rptr. 573].) The cases have concluded that substantial evidence review is required by Welfare and Institutions Code section 10962 and is appropriate because the applicant, unlike persons who have been receiving benefits, does not have a vested right to the benefits. (*Id.*)

Petitioner attacks both bases for application of the substantial evidence rule, claiming that section 10962 does not command substantial evidence review and that recent decisions do not require a vested right as a condition to independent judgment review.

LEGISLATIVE DETERMINATION OF STANDARD OF REVIEW

Welfare and Institutions Code section 10962 provides: "The *applicant* or *recipient* or the *affected county*, within one year after receiving notice of the director's final decision, may file a petition with the superior court, *under the provisions of Section 1094.5 of the Code of Civil Procedure, praying for a review of the entire proceedings in the matter, upon questions of law involved in the case.* Such review, if granted, shall be the exclusive remedy available to the applicant or recipient or county for review of the director's decision." (Italics added.)

Code of Civil Procedure section 1094.5 provides: "(a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, the case shall be heard by the court sitting without a jury. . . .

"(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any *prejudicial abuse of discretion. Abuse of discretion* is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or *the findings are not supported by the evidence.*

"(c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, *abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record. . . .*" (Italics added.)

Prior to *Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335 [156 Cal.Rptr. 1, 595 P.2d 579], it was held that unless authorized by the California Constitution, administrative agencies could not exercise judicial power and that the separation of powers doctrine required courts to independently determine the weight of the evidence when reviewing adjudicative decisions

of agencies lacking judicial power. (*Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 820-823 [140 Cal.Rptr. 442, 567 P.2d 1162]; *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 et seq. [112 Cal.Rptr. 805, 520 P.2d 29]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 137-144 [93 Cal.Rptr. 234, 481 P.2d 242].) Pointing out that none of the earlier cases had invalidated a statute providing that administrative findings were conclusive if supported by substantial evidence, the court in *Tex-Cal* held that "the Legislature may accord finality to the findings of a statewide agency that are supported by substantial evidence on the record considered as a whole and are made under safeguards equivalent to those provided by the [Agricultural Labor Relations Act] for unfair labor practice proceedings, whether or not the California Constitution provides for that agency's exercising 'judicial power.'" (24 Cal.3d, at p. 346.)

While the Legislature could properly provide for substantial evidence review of administrative determinations denying welfare benefits, it has not done so. The statute involved in *Tex-Cal*, Labor Code section 1160.8, provides: "The findings of the board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive."

By way of contrast, Welfare and Institutions Code section 10962 does not specify substantial evidence review. Rather, it provides for review under the provisions of Code of Civil Procedure section 1094.5 "of the entire proceedings in the matter, upon questions of law involved in the case." Section 1094.5 was designed to leave to the courts the establishment of standards for deciding which cases require independent judgment review and which substantial evidence review. (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd., supra*, 24 Cal.3d 335, 344; *Bixby* v. *Pierno, supra*, 4 Cal.3d 130, 140.) Accordingly, the reference to section 1094.5 does not reflect a legislative direction to apply substantial evidence review, but in the absence of limitation reflects legislative intent to leave to the courts the determination of the appropriate standard of review.

The reference in section 10962 to review "upon questions of law" also fails to constitute legislative direction to apply substantial evidence review. Necessarily, review upon "questions of law" includes review of sufficiency of evidence, and the quoted term does not purport to distinguish between standards of review in determining sufficiency. Section 10962 provides for review not only on petitions by applicants but also

petitions by recipients, and the quoted term applies to both. As we have seen, while substantial evidence review has been traditionally applied to decisions denying benefits, independent judgment review has been applied to decisions terminating assistance. There is no basis to conclude that the Legislature, by using the quoted term, intended to specify one meaning in one class of cases and an entirely different meaning in a second class of cases or intended to repudiate one line of decisions.

Rather, section 10962 should be read as leaving to the courts the determination of the proper standard of review. Under section 1094.5, subdivision (b), the inquiry extends to whether the administrative agency has proceeded without or in excess of jurisdiction, whether there was a fair trial and whether there was prejudicial abuse of discretion. The term "upon questions of law" in section 10962 should be interpreted as commensurate with that inquiry, and when this is done, it is apparent that in accordance with section 1094.5, subdivision (c), it is for the courts to establish the appropriate standard of review in determining whether there has been an abuse of discretion.

### JUDICIAL DETERMINATION OF STANDARD OF REVIEW

Section 1094.5, subdivision (c) provides that the court shall weigh the evidence when "authorized by law to exercise its independent judgment" and in all other cases shall determine whether the findings are supported by substantial evidence. As pointed out above, the section was designed to leave to the courts the establishment of standards to determine which cases require independent judgment review. (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd., supra,* 24 Cal.3d 335, 344; *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 140.)

In *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 144-146, it was concluded that the "courts must decide on a case-by-case basis whether an administrative decision or class of decisions substantially affects fundamental vested rights and thus requires independent judgment review. . . . In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation. This approach finds its application in such an instance as the opportunity to continue the practice of one's trade or profession[12]—a right which induced this

---

[12]See footnote 9, *supra.* 'The right to practice one's profession is sufficiently precious to surround it with a panoply of legal protection.' (*Yakov* v. *Board of Medical Examiners, supra,* 68 Cal.2d 67, 75 [64 Cal.Rptr. 785, 435 P.2d 553].) In *Meyer* v.

court's statement in 1939: 'it necessarily follows that the court to which the application for mandate is made to secure the restoration of a professional license must exercise an independent judgment on the facts. . . .'"

The court also pointed out that "in determining whether the right is sufficiently basic and fundamental to justify independent judgment review, the courts have considered the degree to which that right· is 'vested,' that is, already possessed by the individual. (*McDonough* v. *Goodcell, supra*, 13 Cal.2d 741, 753 [91 P.2d 1035, 123 A.L.R. 1205].) In cases involving applications for a license, the courts have largely deferred to the administrative expertise of the agency. (See *So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.* (1950) 36 Cal.2d 167, 174-178 [223 P.2d 1].) Courts are relatively ill-equipped to determine whether an individual would be qualified, for example, to practice a particular profession or trade. (See *Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App.2d 124, 129, 131-132 [40 Cal.Rptr. 171].) In a case involving the agency's initial determination whether an individual qualifies to enter a profession or trade the courts uphold the agency decision unless it lacks substantial evidentiary support or infringes upon the applicant's statutory or constitutional rights. Once the agency has initially exercised its expertise and determined that an individual fulfills the requirements to practice his profession, the agency's subsequent revocation of the license calls for an independent judgment review of the facts underlying any such administrative decision." (Fns. omitted.) (4 Cal.3d at p. 146.)

The court further explained the fundamental vested right test in *Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 774 et seq. [163 Cal.Rptr. 619, 608 P.2d 707]: "[W]e believe, our

*Nebraska* (1923) 262 U.S. 390, 399 [67 L.Ed. 1042, 1045, 43 S.Ct. 625, 29 A.L.R. 1446], the United States Supreme Court listed the right of the individual 'to engage in any of the common occupations of life' as one of several fundamental liberties, which also include the right of the individual 'to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.' (See *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645]; *Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 169-170 [65 Cal.Rptr. 297, 436 P.2d 297]; *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 309 [61 Cal.Rptr. 661, 431 P.2d 245]; *Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 501-502 [55 Cal.Rptr. 401, 421 P.2d 409]; *Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 561 [55 Cal.Rptr. 505, 421 P.2d 697]; *Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 334 [38 Cal.Rptr. 625, 392 P.2d 385].)"

concern in the *Bixby* case was not directed toward restricting or withdrawing the availability of independent review in 'decision[s] or class[es] of decisions' as to which such availability had been previously established. Rather our concern was directed toward providing a doctrinal basis through which such review could be extended to 'decision[s] or class[es] of decisions' which, although not involving vested property rights in the traditional sense, nevertheless had an impact on the individual 'sufficiently vital . . . to compel a full and independent review' by the court.[5] (*Id.*, at p. 144.) It was in this spirit, then, that we said: 'In determining whether the right is fundamental the courts do not *alone* weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation.' (*Id.*, italics added.)"

Footnote 5 reads: "The relationship between 'vestedness' in the traditional sense and 'fundamentalness' in the *Bixby* sense is illuminated by a little-noted passage of the opinion which states: '[I]n determining whether the right is sufficiently basic and fundamental to justify independent judgment review, the courts have considered the degree to which that right is "vested," that is, already possessed by the individual.' (4 Cal.3d at p. 146.) Thus it could truly be said that the search for 'vestedness' and the search for 'fundamentalness' are one and the same. The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power. (See and cf. *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-45 [112 Cal.Rptr. 805, 520 P.2d 29].)" (26 Cal.3d at p. 779.)

The court further pointed out: "Cases subsequent to *Bixby* have, of course, had occasion to apply the broadened standard there established in order to authorize independent judicial review in circumstances where it might well not have been available under former standards. (See, e.g., *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 823-825 [140 Cal.Rptr. 442, 567 P.2d 1162]; *Dickey v. Retirement Board* (1976) 16 Cal.3d 745, 748-751 [129 Cal.Rptr. 289, 548 P.2d 689]; *Harlow v. Carleson* (1976) 16 Cal.3d 731, 735-737 [129 Cal.Rptr. 298, 548 P.2d 698]; *Strumsky v. San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 45-46; *Kerrigan v. Fair Employment Practice Com.* (1979) 91 Cal.App.3d 43 [154 Cal.Rptr. 29] (hg. den.).) None, however, has suggested that the application of that standard should result in withdrawing independent review from a

'decision or class of decisions' previously entitled to such review. Indeed, we intimated to the contrary when we, in the above-cited *Strumsky* case, restated the *Bixby* rule as follows: 'The essence to be distilled is this: When an administrative decision affects a right which has been legitimately acquired or is otherwise "vested," and when that right is of a fundamental nature from the standpoint of its economic aspect *or* its "effect . . . in human terms and the importance . . . to the individual in the life situation," then a full and independent *judicial* review of that decision is indicated . . . .' (*Strumsky, supra,* at p. 34, first italics added.) Thus, we suggested, a right may be deemed fundamental within the meaning of *Bixby* on either or both of two bases: (1) the character and quality of its economic aspect; (2) the character and quality of its human aspect." (26 Cal.3d at p. 780.)

The court noted: "Our observation in *Bixby* that this court, '[i]n analyzing the fundamental nature of the right asserted, [has manifested] slighter sensitivity to the preservation of purely economic privileges' (*Bixby, supra,* at p. 145) was a statement of historical fact, illustrated by the cases there cited. We have continued since *Bixby,* and will doubtless continue in the future, to remain especially responsive to the human as opposed to the purely economic dimension of rights affected by administrative action. This does not mean, however, that rights whose most visible dimension is the economic one will for that reason remain in all cases something less than 'fundamental' within the meaning of *Bixby.* (See *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835 [116 Cal.Rptr. 487]; cf. *Mountain Defense League* v. *Board of Supervisors* (1977) 65 Cal.App.3d 723, 730 [135 Cal.Rptr. 588].)" (26 Cal.3d at p. 780, fn. 6.)

*Bixby* and *Interstate Brands* establish that for purposes of determining applicability of independent judgment review the terms fundamental and vested are not used to establish absolutes but are used in a relative sense, and they show that it is the weighing of both the fundamental nature and the vested nature of the right which determines whether independent judgment review is required. Thus, both cases explaining the term fundamental refer to the effect of the right in economic and human terms and to the importance of it to the individual. (4 Cal.3d at p. 144; 26 Cal.3d at p. 779.) Effect and importance of rights may vary greatly, and by defining fundamental in terms of effect and importance, the cases reflect that the fundamental character of rights may vary significantly. Similarly, *Bixby* speaks of rights being "possessed" by the individual in discussing the vested requirement (4 Cal.3d at p. 144); *In-*

*terstate Brands* specifically recognizes independent judgment review may be applicable although the administrative decision does not involve "vested property rights in the traditional sense" (26 Cal.3d at p. 779). And both cases refer to the "degree to which that right is 'vested.'" (4 Cal.3d at p. 146; 26 Cal.3d at p. 779, fn. 5.) *Interstate Brands* points out that under the *Bixby* formulation the effect and importance of rights and the degree to which they are possessed are to be weighed together, stating that the "search for 'vestedness' and the search for 'fundamentalness' are one and the same. The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power." (26 Cal.3d at p. 779, fn. 5.)[2]

Weighing the importance and effect of the right and the degree to which it is possessed, it is apparent that the right of the needy disabled to public assistance is of such significance as to require independent judgment review. *Harlow* v. *Carleson, supra,* 16 Cal.3d 731 held that the right of a welfare recipient to *continued* welfare benefits is a fundamental one. "It is fundamental both in economic terms, and in terms of its 'effect . . . in human terms and . . . [its] importance . . . to the individual in the life situation.' (*Bixby* v. *Pierno, supra,* at p. 144.) Like the widow's retirement benefits which we deemed both vested and fundamental in *Strumsky, supra,* the right to continued welfare benefits involves, of course, the individual's means of support. (See also *Thomas* v. *California Emp. Stab. Com., supra,* 39 Cal.2d 501 [247 P.2d 561], holding that unemployment insurance benefits are a 'property right,' the denial of which warrants a limited trial de novo by the reviewing court.) Indeed, welfare benefits to an individual totally disabled from gaining employment are likely to be even more important and necessary than retirement benefits to an individual who may still be able physically to earn a livelihood. As we observed in *McCullough* v. *Terzian* (1970) 2 Cal.3d 647 [87 Cal.Rptr. 195, 470 P.2d 4, 47 A.L.R.3d 266], 'Termination of aid to an eligible recipient deprives him of the very means for his survival and his situation becomes immediately desperate.' (*Id.,* at pp. 653-654.) We think it significant that the United States Supreme Court in *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25

---

[2]In a dictum, the court in *Standard Oil Co.* v. *Feldstein* (1980) 105 Cal.App.3d 590, 605 [164 Cal.Rptr. 403], states that *Interstate Brands* "makes it clear that a trial court shall exercise its independent judgment on an administrative decision when *either* a fundamental interest in the Bixby sense *or* a vested interest in the traditional sense is involved." (Italics in original.) As pointed out above, *Interstate Brands* requires consideration of vestedness and fundamentalness together.

L.Ed.2d 287, 90 S.Ct. 1011], has held that the right to welfare benefits is important enough to fall within the category of benefits to which due process rights attach. Under the principles of our prior cases, we find that this right is also important enough to trigger the independent judgment standard of review when an administrative determination has been made terminating a person's entitlement to this right." (16 Cal.3d at p. 737.)

The right of the needy applicant to welfare benefits is as fundamental as the right of a recipient to continued benefits. Because need is a condition of benefits, erroneous denial of aid in either case deprives the eligible person "'of the very means for his survival and his situation becomes immediately desperate.'" (16 Cal.3d at p. 737.)

The decisions subsequent to *Bixby* denying independent review to decisions on applications for welfare benefits were not based on the theory that there was no fundamental right but reasoned that the right of the applicant was not vested. (E.g., *Repko* v. *Carleson, supra*, 48 Cal.App. 3d 249, 265-266; *Taylor* v. *Martin, supra*, 28 Cal.App.3d 1057, 1059.) Although *Bixby* distinguished between possessed and vested rights and rights "merely sought" (4 Cal.3d at p. 144), it immediately pointed out the reason for substantial evidence review in the latter situation: "[S]ince the administrative agency must engage in the delicate task of determining whether the individual qualifies for the sought right, the courts have deferred to the administrative expertise of the agency." (*Id.*) When the court, discussing licensing cases, returned to the vested issue, it again pointed out that courts "are relatively ill-equipped to determine whether an individual would be qualified, for example, to practice a particular profession or trade. [Citation.] . . . Once the agency has initially exercised its expertise and determined that an individual fulfills the requirements to practice his profession, the agency's subsequent revocation of the license calls for an independent judgment review." (4 Cal.3d at p. 146.)

In cases not involving licensing, independent judgment review has not been limited to decisions terminating or revoking benefits but has been applied to decisions on applications for benefits. (E.g., *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 45 [112 Cal.Rptr. 805, 520 P.2d 29] [widow's service-connected death allowance]; *Thomas* v. *California Empl. Stab. Com.* (1952) 39 Cal.2d 501, 504 [247 P.2d 561] [unemployment insurance benefit]; *Kerrigan* v.

*Fair Employment Practice Com.* (1979) 91 Cal.App.3d 43, 48-52 [154 Cal.Rptr. 29] [age discrimination against applicant for employment]; *Quintana* v. *Board of Administration* (1976) 54 Cal.App.3d 1018, 1021 et seq. [127 Cal.Rptr. 11] [disability pension application].) "[T]he meaning of vested, 'possessed by,' need not be limited to describing tangible wealth; constitutional and statutory rights can also be 'possessed' by a person: to that extent they are vested." (*Kerrigan* v. *Fair Employment Practice Com., supra*, 91 Cal.App.3d 43, 51.)

Evaluating the degree to which the right is vested, it is apparent that the right to welfare benefits is not based on expertise, competence, learning, or purchase or ownership claim. Determination of qualification for public assistance does not involve the "delicate task" of evaluating competence to engage in a broad field of endeavor as is true in most licensing cases.

Rather, the qualification for public assistance primarily is based on need, the absence of income or other source of funds. The applicant for public assistance is seeking aid because of deterioration of his life situation in economic terms. Unlike the applicant for a license, he is not seeking advancement of his earlier life situation. The statutory public assistance programs provide protection to citizens who through economic adversity are in need and as such should be viewed as residual rights possessed by all of the citizenry to be exercised when circumstances require.

While the degree to which the right is vested may not be overwhelming, the degree of fundamentalness is. Weighing them together as required by *Bixby* and *Interstate Brands*, we conclude the independent judgment standard should be applied to decisions denying applications for welfare benefits. Insofar as inconsistent with the views expressed above, the cases of *Tripp* v. *Swoap, supra*, 17 Cal.3d 671, 676 and *Bertch* v. *Social Welfare Dept., supra*, 45 Cal.2d 524, 529 are overruled and the cases of *Ferreira* v. *Swoap, supra*, 62 Cal.App.3d 875, 881, *Millen* v. *Swoap, supra*, 58 Cal.App.3d 943, 947-948, *Repko* v. *Carleson, supra*, 48 Cal.App.3d 249, 265-266, *Henderling* v. *Carleson, supra*, 36 Cal.App.3d 561, 567, *County of Madera* v. *Carleson, supra*, 32 Cal.App.3d 764, 767, *Taylor* v. *Martin, supra*, 28 Cal.App.3d 1057, 1059, *Stratton-King* v. *Martin, supra*, 28 Cal.App.3d 686, 690, and *County of Contra Costa* v. *Social Welfare Board, supra*, 199 Cal.App. 2d 468, 472, are disapproved.

The judgment is reversed with directions to enter judgment for petitioner.

Bird, C. J., and Tamura, J.,* concurred.

**MOSK, J.**—I concur.

▮ I agree with the conclusion of the majority for the reasons expressed more than a decade ago in my concurring opinion in *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 161 [93 Cal.Rptr. 234, 481 P.2d 242]. Although *Bixby* involved a professional license, my point that an applicant and a licensee should be measured by the same standard was sound then, and it is equally sound here as adapted to the qualifications of an allegedly permanently disabled person applying for public assistance.

Bird, C. J., concurred.

**NEWMAN, J.,** Dissenting.—In 1965, two decades after enactment of the California Administrative Procedure Act, the Legislature spoke as follows: "The applicant [in cases such as this], under the provisions of Section 1094.5 of the Code of Civil Procedure, [may seek] a review of the entire proceedings in the matter, *upon questions of law involved in the case.*" (Welf. & Inst. Code, § 10962; italics added.)

What was meant by the words "questions of law"? I infer that the drafters used them to express their view that, in these disability cases, a superior court was not "authorized by law to exercise its independent judgment on the evidence" (Code Civ. Proc., § 1094.5, subd. (c)). If instead the intent had been to delegate to judges the decision whether to (1) exercise independent judgment, or (2) search for substantial evidence, the draft simply would have read, "The applicant . . . , under the provisions of Section 1094.5 of the Code of Civil Procedure, [may seek] a review of the entire proceedings in the matter." That bobtailed version would have justified the trial judge's analysis here; it also would have justified the contrary analysis favored in this court's majority opinion.

The Legislature did not, however, say that judges could choose. Rather it added a clause that I think was intended to authorize judicial review "[only] upon questions of law involved in the case." What are

---

*Assigned by the Chairperson of the Judicial Council.

questions of law? Innumerable opinions of this court and other courts have stressed that those questions differ from questions of fact. To decide, pursuant to section 1094.5, subdivision (c), that "findings are not supported by the weight of the evidence [including, e.g., findings as to conflicting testimony]" is to decide questions of fact, not law.

Is there any authority, anywhere, suggesting that such a decision does not involve a question of fact? (Compare § 1094.5, subd. (a), which limits mandate to "a proceeding in which ... evidence is required to be taken and discretion in *the determination of facts* is vested in the [agency]." (Italics added.) See too *Bertch* v. *Social Welfare Dept.* (1955) 45 Cal.2d 524, 529 [289 P.2d 485]: "Petitioners ... argue that they should have been given a trial de novo in the superior court. In other words, it is contended that the trial court should have based its decision on the facts as well as the law.")

Questions of law include "whether the respondent [the agency] has proceeded without, or in excess of jurisdiction; whether there was a fair trial ... [whether] the respondent has not proceeded in the manner required by law, [and whether] the order or decision is not supported by the findings" (Code Civ. Proc., § 1094.5, subd. (b)).

What about the question whether "the findings are ... supported by substantial evidence in the light of the whole record" (§ 1094.5, subd. (c))? That, I submit, *is* a question of law; and there is no hint that in 1965 the Legislature would have disagreed. The overriding rule affecting decisions by an agency, a jury, or a trial judge—throughout the United States and in our state, too—is that reviewing courts (who only on rare occasions reweigh the evidence) traditionally and consistently ask whether findings are supported by substantial evidence, a question of law.

There seems to be no evidence whatever, in text or legislative history, to indicate that the Legislature did *not* intend "to repudiate one line of decisions" in the somewhat confused welfare cases. (Cf. maj. opn., *ante*, p. 174, first ¶.) Three little words in a statute ("questions of law") surely are to be preferred over the incessant litigants' parade to this court—a parade that perhaps soon may be memorialized for nearly a half-century's insistence (i.e., prior to *Tex-Cal Land Management, Inc.* v. *Agriculture Labor Relations Bd.* (1979) 24 Cal.3d 335 [156 Cal.Rptr. 1, 595 P.2d 579]) that (1) each right-privilege borderline be confronted judicially (with demonstrable frequency in this court), and

"intrusion" by the Legislature be strictly scrutinized. Section 1094.5 law differs greatly from equal protection law, and I believe we should respond to arguably ambiguous commands of the Legislature as allies, not as strict-scrutiny antagonists.[1]

Richardson, J., and Kaus, J., concurred.

---

[1] I do not agree that all the cases cited at the middle of page 171, *ante*, of the majority opinion conclude that substantial evidence review "is appropriate because the applicant ... does not have a vested right" (p. 171, *ante*). I read *Henderling* v. *Carleson* (36 Cal.App.3d at p. 567 [111 Cal.Rptr. 612]) as relying on Welfare and Institutions Code section 10962; and its words were quoted in both *Repko* and *Ferreira*. *Bertch* and *County of Contra Costa* were decided prior to the enactment of section 10962. The statute was neither discussed nor cited in the leading case, *Harlow* v. *Carleson* (1976) 16 Cal.3d 731 [129 Cal.Rptr. 298, 548 P.2d 698].