Filed 7/16/19; pub. order 8/8/19 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ETTA MAE JOHNSON,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>HOUSING AUTHORITY OF THE<br>CITY OF OAKLAND,<br><br>     Defendant and Appellant. | A154836<br><br>(Alameda County<br>Super. Ct. No. RG17873075) |

The Housing Authority of the City of Oakland (housing authority), which administers a federally funded subsidized housing program for the City of Oakland, appeals a judgment and writ of administrative mandate directing it to vacate its decision terminating plaintiff Etta Mae Johnson from its program. The housing authority contends the trial court erred in finding that it violated Johnson's procedural due process rights in terminating her from the program. We agree and, accordingly, shall reverse the judgment.

**Background**

Statutory Background

Section 8 of the Housing and Community Development Act of 1974 (section 8) (42 U.S.C. § 1437f(o)) is a federally funded and regulated program that provides housing assistance to financially eligible families. The United States Department of Housing and Urban Development (HUD), which funds the section 8 program, has enacted regulations governing the administration of the program by local public housing agencies. The regulations provide both mandatory and discretionary grounds for termination from the

1

program. (24 C.F.R. § 982.552.) Termination is mandatory when a participant has been evicted from subsidized housing for serious violations of the participant's lease. (24 C.F.R. § 982.552(b)(2).) Termination is discretionary when a participant violates any "family obligations" imposed under the program including, as relevant here, committing "any serious or repeated violation" of the participant's lease, failing to supply any information the housing authority determines is necessary in the administration of the program and promptly giving the housing authority a copy of any landlord eviction notice. (24 C.F.R. §§ 982.552(c)(1)(i); 982.55l(b)(l), (e) & (g).) In determining whether to terminate assistance on a discretionary ground, the housing authority "may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure." (24 C.F.R. § 982.552(c)(2)(i).)

A person receiving section 8 benefits has an interest in continued receipt of those benefits that is safeguarded by procedural due process. (*Nozzi v. Hous. Auth.* (9th Cir. 2015) 806 F.3d 1178, 1192, as amended on denial of rehg. en banc (Jan. 29, 2016), citing *Goldberg v. Kelly* (1970) 397 U.S. 254, 267 (*Goldberg*).) To terminate section 8 housing assistance, due process requires, among other things, timely and adequate notice of the reasons for the proposed termination and a written decision following a pre-termination hearing that states the reasons for the determination and the evidence on which the decision maker relied. (*McCall v. Montgomery Hous. Auth*. (M.D. Ala. 2011) 809 F.Supp.2d 1314, 1324, citing *Goldberg, supra*, at pp. 266-271.) The purpose of the written notice is "to inform the tenant of the allegations so that he can prepare a defense." (*Edgecomb v. Hous. Auth.* (D. Conn. 1993) 824 F.Supp. 312, 314.) In light of that purpose, the notice must be "sufficiently specific . . . to enable [the tenant] to prepare rebuttal evidence to introduce at his hearing appearance." (*Id*. at p. 315.) At the hearing, the hearing officer must determine whether the termination of benefits is in accordance with the law, federal regulations, and departmental policies and issue a written decision.

(*Cole v. Metro. Council HRA* (Minn. Ct.App. 2004) 686 N.W.2d 334, 338.) While "due process generally requires the decision-maker to state the reasons for his determination and indicate the evidence upon which he relied . . . the decision need not amount to a 'full opinion or even formal findings of fact and conclusions of law.' " (*McCall*, *supra*, at p. 1324.) The purpose of the written decision is, in part, to demonstrate that "the decisionmaker's conclusion as to the recipient's eligibility . . . rest[s] solely on the legal rules and evidence adduced at the hearing." (*Goldberg*, *supra*, at p. 271.)

Similarly, the HUD regulations require a local housing authority to provide "prompt written notice" of intended termination of benefits. The notice must: "(i) Contain a brief statement of reasons for the decision; (ii) State that if the family does not agree with the decision, the family may request an informal hearing on the decision, and (iii) State the deadline for the family to request an informal hearing." (24 C.F.R. § 982.555(c)(2).) With respect to pre-termination hearings, the HUD regulations incorporate the *Goldberg* standard as follows: " '[T]he person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision.' " (*McCall v. Montgomery Hous. Auth.*, *supra*, 809 F.Supp.2d at p. 1325, citing 24 C.F.R. § 982.555(e)(6).)

Factual and Procedural Background

On February 3, 2015, Johnson's section 8 landlord served on her a "lease violation notice" informing her that she had violated the terms of her lease by following another tenant of the property to his apartment and using profanity. On June 30, 2015, the landlord issued a "notice to cease" stating that management had received a complaint from a resident alleging that she had used pepper spray against him. Finally, on February 29, 2016, landlord's counsel served a "ninety-day notice of termination of tenancy" on Johnson on the ground that she "continued to be in substantial violation of . . . [her] rental agreement and continued to be so disorderly as to destroy the peace and quiet of other tenants of the property." The notice stated: "[O]n January 19, 2016, management received a complaint letter from a fellow female resident stating that you had used profane language and made threats of bodily harm . . . [to] this complaining resident and

3

her family members. You further stated to other fellow residents that this complaining resident had robbed you and broken into your car when you have no evidence to support these allegations."

On June 7, 2016, when Johnson failed to vacate, the landlord filed an unlawful detainer action against her. On August 1, 2016, the action was settled by a stipulation of the parties. Pursuant to the stipulation, landlord agreed to reinstate Johnson's tenancy on the condition that she conform her conduct to the lease for a probationary period of 12 months after which the unlawful detainer action would be dismissed. In the event that Johnson breached the settlement agreement, landlord retained the right to apply for entry of judgment based on specified evidence of breach.

On October 12, 2016, the landlord applied for entry of judgment in the unlawful detainer action. Landlord claimed that Johnson violated the personal conduct requirements of the stipulation. In support of its application for judgment, landlord submitted among other things, a declaration by a neighbor who stated Johnson had come to her apartment, refused to leave when asked, used an expletive, and then poured soda on her face, and a declaration by a second neighbor who claimed to have witnessed the incident. On October 20, 2016, the court granted landlord's application for entry of judgment and Johnson was evicted on January 19, 2017.

On February 9, 2017, after learning of the eviction, the housing authority served Johnson with a notice advising her that it wished to discuss the eviction with her. The notice included a hearing date and requested that Johnson bring with her to the meeting various items, including the "initial unlawful detainer," "stay of execution" and "any further documentation pertaining to [her] eviction."

The meeting took place on February 21, 2017. Following the meeting, the housing authority issued the following summary of the meeting:

"We met on 2/21/2017, and discussed the following: [¶] We reviewed the three attached notices from your landlord dated 2/3/2015, 6/30/2015 and 2/29/2016 which state that you harassed, threatened, and caused bodily harm to your neighbor(s) that resulted in your eviction. Additionally, we have a copy of the community incident report in which

4

the property manager stated that you followed and harassed him. [¶] You denied all of the accusations made against you and stated that the landlord continuously made false statements against you. You further stated that none of the statements made against you by your neighbors were signed which, according to you, proves that they were manufactured by your landlord. You stated that your landlord initially took your neighbors to court before deciding to take you to court. I advised you that we would only address the documentation we received that pertains to your housing assistance, not your neighbors'. Additionally, you stated that your neighbors and your landlord were involved in the hit and run of your vehicle as well as theft from your vehicle and that they wrongly moved forward with the eviction as you are the one who was wronged. You stated that your car insurance company has been investigating this matter. You were asked to provide a statement or other verification of this from your car insurance provider. [¶] I then informed you that your attorney, Andrew Wolff[], stated during my telephone conversation with him on 2/8/2017 that he believes that the reason why the court ruled in favor of your landlord is because one of the several statements made against you were signed. I advised you that the request for civil harassment restraining orders made against you by your neighbor . . . were signed and filed on 10/11/2016. You stated that she had no reason to file for a restraining order and that you wanted to file one against her. [¶] Moreover, you signed a stipulation on 8/1/2016 in which you agreed to not threaten people on the premises. You argued that your landlord altered this document by adding 'with bodily harm or use profane language towards them in a harassing and threatening manner.' We discussed that you still signed the initial statement agreeing not to threaten anyone on the premises. [¶] On 10/20/2016 the judge issued a judgment pursuant to stipulation which ordered the landlord to recover the unit because you did not abide by the terms of the stipulation. You stated that you were granted a stay until 2/6/2017. [¶] Also, you submitted letters to [the housing authority] from your sister and neighbor as documentation that you are innocent of the allegations made by your landlord and neighbors. These letters were not used as part of your exhibit in court. [¶] You submitted [an Oakland Police Department incident report] as proof that you are the victim in the

dispute between you and your neighbor(s). The report states that there are no known injuries or witnesses and that there was no force used or observed. [¶] Lastly, your attorney, Andrew Wolff, advised me that you have filed for an unlawful detainer appeal but that he does not know what the turnaround time is. [¶] You were reminded of your participant obligations which state that you must give [the housing authority] a copy of any eviction notice you receive within 5 days and that you must not engage in violent or drug-related criminal activity, or other criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by persons living near you. [¶] You were advised that [the housing authority] will be proposing termination of your housing assistance but that we will need for you to submit the documentation specified below." As a result of this meeting, the housing authority reached the following determinations: "You are in violation of your participant obligations due to the following: [¶] 1. Committing serious or repeated violations of your lease agreement resulting in your eviction [¶] 2. Not providing [the housing authority] with a copy of the eviction notices within 5 days [¶] 3. Engaging in violent activity that threatened the health, safety, or right to peaceful enjoyment of the premises by persons living near you." The summary advises Johnson to submit to the housing authority by no later than March 29 the "initial unlawful detainer," "stay of execution" and "[a]ny documentation to show that you were wrongfully evicted."

On April 24, 2017, the housing authority issued a "proposed termination of section 8 assistance notice" (pre-termination notice) formally notifying Johnson of its intent to terminate her section 8 benefits. The pre-termination notice is a check-the-box type form providing additional space for a narrative description of the conduct on which the proposed termination is based. The housing authority checked the following items as the basis for its proposed termination of Johnson's housing assistance: (1) Johnson failed to supply the housing authority with required information (24 C.F.R. §§ 982.552(c)(l)(i), 982.55l(b)); (2) Johnson failed to supply the housing authority with the required eviction notice (24 C.F.R. §§ 982.552(c)(l)(i), 982.551(g)); (3) Johnson committed serious and/or repeated violations of her lease (24 C.F.R. §§ 982.552(c)(l)(i), § 982.55l(e)); and (4)

Johnson was evicted for committing serious and/or repeated violations of the lease (24 C.F.R. § 982.552(b)(2)). The notice explained, "You violated the family obligations by committing serious and/or repeated violations of your lease agreement, failing to submit the eviction notices within 5 days, and failing to provide additional information necessary to administer the section 8 program." It continued, "You failed to submit the following eviction notices to [the housing authority] within 5 days: Unlawful detainer for case #RG 16818543, and the corresponding summons and writ of possession. On 2/9/2017, you were requested to submit the unlawful detainer and all other eviction documentation at the meeting scheduled on 2/21/2017. You failed to submit these requested documents. On 3/15/17 you were again requested to submit a copy of the unlawful detainer by 3/29/2017. You did not submit a copy of this eviction notice as required by the participant obligations." The notice advised Johnson that her assistance would terminate effective May 24, 2017 and that she could appeal the decision by making a request for an informal hearing.

Johnson made a written request for an informal hearing, which took place on May 23, 2017. At the hearing, the housing authority submitted numerous documents in support of its termination decision, including the landlord's notices and the community incident report referenced in the meeting summary and the judgment entered in the unlawful detainer action. According to the hearing officer's decision, "a representative of [the housing authority] testified that Ms. Johnson violated her family obligation by committing serious and/or repeated violations of her lease agreement [and] also failed to submit the eviction notices within 5 days . . . . [¶] Furthermore, Ms. Johnson was evicted from her unit effective January 19, 2017." Johnson testified and also presented documentary evidence in support of her defense. According to the hearing officer's written decision, "Johnson testified that she was a good resident and that folks in her building, including her daughter, made false allegations about her to apartment management which led to her eviction. She also claimed that the property manager was corrupt and . . . conspired with residents in the building to get her evicted." The hearing officer observed that "[m]ost of Ms. Johnson's testimony was not germane to the

informal hearing. She brought up many issues that had occurred in the past or simply was not relevant to the issues that she was facing related to her possible termination." Ultimately, the hearing officer concluded, based on the evidence presented at the hearing, that Johnson was "evicted from her residential unit and that she failed to notify the . . . housing authority of her eviction," that she "never offered a reason as to why she did not notify the [housing] authority that she was facing eviction from her subsidized rental unit" and, therefore, that the preponderance of the evidence supported the housing authority's decision to terminate Johnson from the section 8 program.

Johnson requested an informal review of the hearing officer's decision. The housing authority's executive director upheld the termination of Johnson's housing assistance, finding that Johnson "violated the following program rules and obligations: [¶] 1. Failed to supply the housing authority with required information. [24 C.F.R. §] 982.552(c)(l)(i)[;] [¶] 2. Committed serious and repeated violations of your lease. [24 C.F.R. §] 982.552(c)(l)(i)[; and] [¶] 3. Evicted for serious and repeated violations of the lease. [24 C.F.R. §] 982.552(b)(2)." No additional explanation was provided.

Thereafter, Johnson filed the present action seeking a writ of mandate. She argued that the pre-termination notice violated her due process rights because it did not adequately inform her of the allegations against her so she could prepare a defense with rebuttal evidence. She also argued that the hearing officer failed to proceed in a manner required by law by terminating her section 8 voucher without recognizing its discretion to consider mitigating circumstances.

The trial court entered judgment in Johnson's favor directing the housing authority to set aside its decision and reconsider whether to terminate Johnson from the section 8 program. The court found that the pre-termination notice was deficient because it did not provide any of the facts regarding the alleged lease violations and failed to identify what "additional information" Johnson failed to provide. The court also found that the decisions by the hearing officer and executive director were inadequate because they

8

failed to identify the factual basis for their decisions or the reasons for the exercise of discretion regarding the non-mandatory grounds for termination.[1]

The housing authority timely filed a notice of appeal.

## Discussion

### 1. Standard of Review

Section 1094.5 of the Code of Civil Procedure governs judicial review by administrative mandate of a final decision or order rendered by an administrative agency. Because a decision terminating or denying public assistance affects fundamental vested rights, the trial court exercises independent judgment in reviewing the decision. (*Ruth v. Kizer* (1992) 8 Cal.App.4th 380, 385; *Frink v. Prod* (1982) 31 Cal.3d 166, 180.) We review "the record to determine whether the trial court's findings are supported by substantial evidence. We resolve all evidentiary conflicts and draw all reasonable inferences in favor of the trial court's decision, and may overturn the trial court's factual findings only if the evidence is insufficient as a matter of law to sustain them. [Citation.] However, where the determinative issue is legal rather than factual we exercise our independent judgment. [Citation.] 'If the decision of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds on which the court reached its conclusion.' " (*LaGrone v. City of Oakland* (2011) 202 Cal.App.4th 932, 940–941.)

### 2. Adequacy of the Pre-termination Notice

The parties dispute what documents this court should consider in measuring the adequacy of the notice given to Johnson prior to her termination from the program. Johnson contends the trial court properly considered only the April 24 pre-termination notice. The pre-termination notice properly advised Johnson that she was being

[1] Johnson's petition also argued that she was denied the opportunity to cross-examine the witnesses against her in violation of her due process rights. The trial court considered this argument moot in light of its decision to grant the petition on other grounds. Johnson has not reasserted this argument on appeal.

terminated from the program based on her failure to submit to the housing authority in a timely manner the judgment in the unlawful detainer case and the corresponding summons and writ of possession. The trial court correctly observed, however, that the notice failed to sufficiently apprise Johnson of the additional grounds for her termination from the program. While the notice indicates that Johnson committed serious and/or repeated violations of her lease agreement, it fails to indicate the dates or details of the purported violations.

The housing authority argues that in determining the adequacy of the notice, the court should also have considered what transpired at the February 21, 2017 meeting and the written meeting summary that was provided Johnson one month before the formal notice. The housing authority relies on *Goldberg, supra*, 397 U.S. at page 268, in which the court upheld a system which conveyed notice similar to that used by the housing authority in this case. In *Goldberg,* the court explained, "New York employs both a letter and a personal conference with a caseworker to inform a recipient of the precise questions raised about his continued eligibility. Evidently the recipient is told the legal and factual bases for the Department's doubts. This combination is probably the most effective method of communicating with recipients." (*Ibid*.)

In *Driver v. Housing Authority* (2006) 289 Wis.2d 727 (*Driver*), cited by Johnson, the court recognized that while "*Goldberg* might allow for 'actual or constructive notice,' " the federal regulations adopted to implement the section 8 program "contemplated 'an arguably higher standard of "what process is due." ' " (*Id*. at p. 743, citing *Morales v. McMahon* (1990) 223 Cal.App.3d 184, 190.) The court explained that the federal regulations "mandate *written* notice, and strict compliance is imperative as a matter of law and public policy." (*Driver*, at p. 732.) The court explained, "Because of the informality surrounding the pre-termination hearing process, courts may have little or no record upon which to ascertain the sufficiency of oral or other actual notice. . . . Faced with such a sparse record, a section 8 recipient who attempts to establish that he or she did not receive oral notice faces a nearly insurmountable task. Courts would likely infer actual notice in many cases from the mere opportunity of the plaintiff to discover the

10

pertinent information (i.e., constructive notice) combined with the housing authority's assertion that he or she in fact exercised that opportunity, at which time it provided oral notice. Thus, an 'actual notice' exception would not adequately protect a section 8 recipient's property right in his or her benefits." (*Id*. at pp. 744-745.)

Assuming that *Driver* is correct that the *Goldberg* system of notice fails to comply with the federal regulation because there is no written record of the oral consultation, the written meeting summary provided in this case resolves that concern. In *Driver*, there were "no records of the administrative proceedings . . . from which to ascertain how much the plaintiffs knew about the claims against them." (*Driver, supra,* 289 Wis.2d at p. 744.) Here, the summary provides a written record of the consultation and sets forth the factual basis for the lease violations relied on by the housing agency in terminating her from the program. The summary was drafted and appears to have been mailed to Johnson more than a month before the pre-termination notice. The summary coupled with the pre-termination notice was sufficient to enable Johnson to prepare her defense.[2] (See *Rosen v. Goetz* (6th Cir. 2005) 410 F.3d 919, 931 ["Due process does not require 'reasonably calculated' notice to come in just one letter, as opposed to two."].)

Accordingly, Johnson was given sufficient notice of these grounds for termination of her benefits: she failed to supply the housing authority with required eviction notice; she committed serious and/or repeated violations of her lease; and she was evicted for committing serious and/or repeated violations of the lease.

### 3. *Adequacy of the written decision*

The housing authority's "notice of decision" is divided into multiple subsections. An introductory section sets forth the three grounds for the proposed termination and identifies the participants at the hearing. As set forth above, the "summary of

---

[2] The trial court also found that the notice failed to identify what "additional information necessary to administer the section 8 program" Johnson failed to provide. Because the meeting summary adds little information to this ground, we agree that Johnson's termination could not properly be based on this ground. The failure, however, is not prejudicial as the remaining grounds amply support the termination.

evidence/testimony" subsection includes a summary of the testimony given by the participants and lists the 12 exhibits relied on by the hearing officer. Finally, the "hearing decision" subsection reads in relevant part as follows: "Based on the clear evidence presented at the informal hearing by [the housing authority's representative] it is clear that Ms. Etta Johnson was evicted from her residential unit and that she failed to notify the . . . housing authority of her eviction. [¶] During her testimony, Ms. Johnson never offered a reason as to why she did not notify the Authority that she was facing eviction for her subsidized residential unit. [¶] Therefore, upon review of the evidence presented in the hearing, it is determined that the preponderance of the evidence does support the Housing Authority's decision to terminate Ms. Etta Johnson from the section 8 program. It is determined that the Oakland Housing Authority's decision to terminate Ms. Johnson[] from [the section 8 program] is UPHELD."

The parties disagree whether the above notice reflects a decision to uphold the termination of Johnson from the program on each of the proposed grounds or merely on her failure to supply the housing authority with the required eviction notice. The distinction is significant because termination is mandatory under a finding that she was evicted for committing serious and/or repeated violations of the lease but merely discretionary under the remaining two findings. Although there is some ambiguity in the hearing officer's written decision, read as a whole we believe the decision upholds the termination on each of the identified grounds. Moreover, even if the decision should be read narrowly as Johnson suggests, the single ground is sufficient to comply with due process.

As set forth above, due process in this instance required the hearing officer to issue a written decision, stating briefly the reasons for the decision sufficient to advise the recipient of the basis for her termination from the program and to allow judicial review. Contrary to Johnson's argument, the summary of evidence sufficiently identifies the four incidents that support the lease violations that led to her eviction and the documents on which the hearing officer relied in finding that she had repeatedly violated her lease. The repeated violations were serious, so that that Johnson was properly evicted for the lease

12

violations. Because termination from the program was mandatory on this ground, no further explanation was required.

Assuming that the notice of decision is interpreted to uphold the termination based solely on Johnson's failure to timely notify the housing authority of her eviction, contrary to Johnson's argument, the decision comports with the requirements of due process. Johnson is correct that a "hearing officer's failure to make any findings, coupled with his failure to indicate any awareness that he was explicitly authorized by HUD to exercise his discretion to take into account relevant circumstances" is contrary to established law. (*Carter v. Lynn Hous. Auth.* (Mass. 2008) 880 N.E.2d 778, 786-787.) Here, however, the second paragraph of the decision quoted above demonstrates that the hearing officer was aware of the housing authority's discretion to excuse the violation but nonetheless chose not to exercise that discretion in Johnson's favor. As the hearing officer noted, Johnson did not attempt to justify or excuse her failure to notify the housing authority of her eviction. Nor did she offer any evidence or argument regarding mitigating circumstances. Although the termination of services undoubtedly may result in a significant hardship for Johnson, nothing in the record suggests that the hardship is significantly different from the hardship that most other recipients of housing assistance suffer when their benefits are terminated. Nothing in the record demonstrates that the hearing officer abused its discretion in refusing to excuse the violation.

Accordingly, we must reverse the trial court's order granting the petition for writ of mandate.

## Disposition

The judgment is reversed and the matter remanded with directions to enter judgment denying the petition for writ of mandate.

_____
POLLAK, P. J.

WE CONCUR:


_____
STREETER, J.


_____
BROWN, J.

A154836

Filed 8/8/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ETTA MAE JOHNSON,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>HOUSING AUTHORITY OF THE CITY OF OAKLAND,<br><br>     Defendant and Appellant. | A154836<br><br>(Alameda County<br>Super. Ct. No. RG17873075)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter, filed on July 16, 2019, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Date: _____ P.J.

Trial court:                                    Alameda County Superior Court

Trial judge:                                    Honorable Kimberly Colwell

Counsel for plaintiff and respondent:           James T. Diamond, Jr.
                                                GOLDFARB & LIPMAN LLP

Counsel for defendant and appellant:            Andrew Wolff
                                                Tony Ruch
                                                LAW OFFICES OF ANDREW WOLFF, P.C.

A154836