Filed 3/4/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SHEVON HARRINGTON, | |
| Plaintiff and Appellant, | E084672 |
| v. | (Super.Ct.No. CVSW2307829) |
| HOUSING AUTHORITY OF RIVERSIDE COUNTY, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Angel M. Bermudez, Judge. Reversed with directions.

Shevon Harrington, in pro. per., for Plaintiff and Appellant.

Cole Huber, David G. Ritchie and Tyler J. Sherman for Defendant and Respondent.

INTRODUCTION

Shevon Harrington appeals from a judgment denying her petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) seeking to overturn the Housing Authority of Riverside County's (the HA) decision to terminate her Section 8 financial

assistance (42 U.S.C. § 1437f et seq.).[1] In supplemental briefs filed at our direction, Harrington contends that the trial court misunderstood the scope of judicial review under section 1094.5 and that the findings the hearing officer made at Harrington's administrative hearing are not supported by the evidence. (§ 1094.5, subd. (b).) We agree.

The HA provided Harrington with a notice of its intent to terminate her financial assistance and informed her of her right to request an administrative hearing. Following that hearing, the hearing officer issued a written decision concluding that termination was mandatory under the Section 8 federal regulations, because Harrington had been evicted from her apartment and the unlawful detainer judgment was upheld on appeal. In fact, Harrington's appeal of the unlawful detainer judgment was pending at the time of the hearing and, shortly after she filed her writ petition in the trial court, the appellate division of the Riverside County Superior Court reversed the judgment for insufficient evidence.

In ruling on Harrington's mandamus petition, the trial court correctly concluded that the hearing officer's findings were not supported by the record. However, the court also concluded that the "independent judgment" standard authorized it to independently determine whether the record supported any alternative grounds for termination. The court found that Harrington had violated three of the "family obligations" set out in the

---

[1] Unlabeled statutory citations refer to the Code of Civil Procedure.

Section 8 regulations.  On the basis of those findings, the court concluded that discretionary termination was appropriate and upheld the HA's decision.

We conclude that the court misunderstood the scope of judicial review because section 1094.5 requires a determination of whether the agency's factual findings, not its ultimate decision, are supported by the record.  (§ 1094.5, subd. (b).)  The HA concedes the error but argues that we can affirm the judgment on the additional violations found by the trial court.  However, because those violations were not at issue during the administrative hearing, they cannot provide a basis for affirming the HA's decision.  We therefore reverse.

## BACKGROUND

A.  *Regulatory Background*

Section 8 of the Housing and Community Development Act of 1974 (Section 8) (42 U.S.C. § 1437f et seq.) is "a federally funded and regulated program that provides housing assistance to financially eligible families."  (*Johnson v. Housing Authority of City of Oakland* (2019) 38 Cal.App.5th 603, 606 (*Johnson*).)  The program is administered and funded by the Department of Housing and Urban Development (HUD) and operated on the local level by "public housing authorities" like the HA.  (*Morrison v. Housing Authority of the City of Los Angeles Bd. of Comrs.* (2003) 107 Cal.App.4th 860, 864, fn. 1.)

The Section 8 regulations, enacted by the HUD, "provide both mandatory and discretionary grounds for termination from the program."  (*Johnson*, *supra*, 38 Cal.App.5th at p. 606, citing 24 C.F.R. § 982.552 (2019).)  A public housing authority

3

*must* terminate a participant from the program if the participant has been evicted for "serious or repeated" violations of his or her lease. (24 C.F.R. § 982.552(e) (2026).) A public housing authority *may* terminate a participant from the program if the participant has violated any one of the "family obligations" contained in the regulations. (24 C.F.R. § 982.552(c)(1)(i) (2026).) Those obligations include (1) submitting any information the public housing authority requests as part of its annual or interim eligibility "reexamination" process; (2) complying with the housing quality standards by preventing damage to the unit beyond normal wear and tear; and (3) allowing the public housing authority "to inspect the unit at reasonable times and after reasonable notice." (24 C.F.R. § 982.551(b)-(d) (2026).) When termination is discretionary, the regulations advise the authority to "consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure." (24 C.F.R. § 982.552(c)(2)(i) (2026).)

Before terminating a participant from the Section 8 program, the public housing authority must (1) provide notice of its proposed decision with a "brief statement of the reasons for the decision" and (2) allow the participant to request an informal administrative hearing to determine whether the authority has acted in accordance with law. (24 C.F.R. § 982.555(c)(2)(i) (2026).) The hearing officer who conducts the review may be "any person or persons designated by" the public housing authority. (24 C.F.R. § 982.555(e)(4)(i) (2026).) The hearing officer must "issue a written decision, stating

4

briefly the reasons for the decision." (24 C.F.R. § 982.555(e)(6) (2026).) The officer's factual findings "shall be based on a preponderance of the evidence presented at the hearing." (*Ibid.*)

B. *Factual and Procedural Background*

    1. <u>The Notice of Intent to Terminate Assistance</u>

In 2017, Harrington began renting a subsidized apartment in Moreno Valley and receiving Section 8 financial assistance from the HA. Her lease required her to comply with the Section 8 regulations and refrain from damaging the premises.

In May 2022, Harrington failed an inspection because the carpet in her apartment was torn in places, a closet door was off its track, the water heater was damaged, and there were cracks in the ceiling. In June 2022, after fixing those issues and watching a video on housekeeping standards provided by her landlord, Harrington passed the follow-up inspection.

In December 2022, Harrington's landlord sent her a 30-day notice to quit stating that a November 2022 inspection revealed that her unit was in an "unsanitary condition" with "excessive damages" and "poor housekeeping." When Harrington did not vacate her apartment, her landlord filed an unlawful detainer action in the Riverside County Superior Court.

In January 2023, the HA sent Harrington a notice regarding its annual eligibility reexamination. The notice informed Harrington that she was required to (1) submit her eligibility information by February 15 and (2) make her apartment available for the annual inspection. After sending the HA multiple emails explaining that she was

5

working on gathering her information but was running behind, Harrington submitted her eligibility reexamination information on April 10, 2023.

Harrington's annual inspection was scheduled for February 6, 2023. The day before, she informed the HA by email that her landlord was trying to evict her and that she would not be able to go forward with the inspection "[d]ue to the overwhelming emotional distress." She asked the HA to "reschedule [the inspection] if and when a judge determines if my disabled household can remain here." The HA rescheduled the annual inspection for the following month, and she passed that inspection on March 14.

A few weeks later, on April 26, 2023, the trial court entered judgment in the landlord's favor in the unlawful detainer action and ordered Harrington to return possession of the apartment to the landlord.

On May 3, 2023, the HA sent Harrington a "Pretermination of Assistance" letter, requiring her to meet with an HA housing specialist to "discuss whether your assistance will be terminated for the following reasons." The letter contained a bullet-point summary of the facts described above and cited to the following five "family obligations:" (1) submitting reexamination information in a timely manner, (2) allowing inspection, (3) complying with housing quality standards, (4) refraining from serious or repeated lease violations, and (5) promptly notifying the public housing authority of an eviction notice. (24 C.F.R. § 982.551 (2026).) The letter also contained the text of 24 Code of Federal Regulations (C.F.R.) part 982.552, which provides that termination is discretionary if the participant fails to comply with any of the family obligations and

mandatory if the participant has been evicted "for serious violation of the lease." (*Ibid*. (2026).)

The meeting with the housing specialist took place on May 15, 2023. Harrington informed the specialist that she was appealing the unlawful detainer judgment, and the specialist replied that the HA would put the termination process on hold while her appeal was pending. According to the specialist's notes, Harrington returned about a week later, on May 23, to request a "grievance hearing." The specialist believed that Harrington was confusing the eviction process, which was controlled by the landlord, with the Section 8 program termination process, which was controlled by the HA. The specialist's response to Harrington's request was to "go ahead and process [the] Intent to Term[inate]" and let Harrington "request a hearing about rental assistance being terminated."

On May 25, 2023, the HA sent Harrington a "Notice of Intent to Terminate Assistance." The contents of the notice were identical to that of the pretermination letter, except that the notice included the housing specialist's notes from the May 15 and 23 meetings and concluded by stating: "You were evicted by the Landlord, Riverside County Superior Court upheld the eviction at initial Hearing and Appeal. You are not eligible for a relocation voucher or continued housing assistance. [¶] IF YOU DO NOT REQUEST AN INFORMAL HEARING IN WRITING, YOUR ASSISTANCE WILL BE TERMINATED ON JUNE 25, 2023 . . . ."

2. The Administrative Hearing and Decision to Terminate

At Harrington's request, an administrative hearing was held on July 5, 2023. Harrington appeared on her own behalf, and the HA's housing specialist appeared on

7

behalf of the HA.  The hearing officer accepted evidentiary submissions from both parties and heard argument before taking the matter under submission.  On July 12, 2023, the hearing officer issued a written decision upholding the HA's decision to terminate Harrington's housing assistance under 24 C.F.R. part 982.552(b) (2026), which provides that termination is mandatory if a participant has been evicted for serious or repeated lease violations.

The decision summarized the parties' arguments during the administrative hearing as follows.  The housing specialist stated that the "controlling" regulation was the mandatory termination provision, 24 C.F.R. part 982.552(b) (2026), which provides that the HA "must terminate program assistance for a family evicted from housing assisted under the program for serious violation of the lease."  She also stated that her understanding was that "the appeal [of the unlawful detainer judgment] is done" and that "the finding was against" Harrington.  Harrington responded that "the appeal is still active" and "recited the points that she is appealing."  The housing specialist responded that she had "not received any documents to show that the appeal is still active," and that, "[b]ecause of the eviction, my supervisors all agreed that it is proper to terminate rental assistance."

The hearing officer's decision concluded:  "The [Section 8] regulations . . . state that 'The [HA] must terminate program assistance for a family evicted from housing assisted under the program for serious violation of the lease.  [¶]  The [HA] is bound by this Federal Regulation and must adhere to it.  Due to the fact that there was a court ordered eviction*, and that it was upheld on appeal*, the [HA] has *no choice* but to

8

terminate assistance.  Therefore, the [HA's] decision to terminate Ms. Harrington from the program is UPHELD.' "  (Emphasis added.)

C. *Petition for Writ of Administrative Mandamus*

In September 2023, Harrington filed a petition for writ of administrative mandamus under section 1094.5 seeking an order compelling the HA to set aside its decision.  Harrington alleged that the hearing officer's finding that the unlawful detainer judgment was upheld on appeal was not supported by the record, because that judgment was still pending before the appellate division of the Riverside County Superior Court.

On February 20, 2024—before the trial court set a briefing schedule and hearing on Harrington's petition—the appellate division issued a decision in the unlawful detainer appeal, reversing the judgment for insufficient evidence.  The decision concluded that the landlord's basis for eviction—i.e., that during the November 2022 inspection, Harrington's apartment was found to be in "unsanitary conditions" with "excessive damages"—was not supported by the record.  The opinion states:  "[The property manager] provided no testimony as to what she observed that day nor did she attempt to describe what the photographs purportedly showed.  She did not testify that she observed any physical damage to the property, or that she observed any signs of rodents, ants, cockroaches or other vermin that would support the finding of unsanitary conditions. . . .  [¶]  Moreover, we are not persuaded that the photographs . . . are a sufficient basis to conclude that the property was in such an unsanitary condition that it . . . violated the terms of the lease."

9

Relying on that decision, Harrington filed a motion asking the trial court to exercise its discretion to temporarily stay the termination of her housing assistance under section 1094.5, subdivision (g), pending the resolution of her petition. At the hearing on the motion, the trial court issued a tentative ruling granting the temporary stay. The court explained that, at Harrington's administrative hearing, the hearing officer based its decision to uphold termination upon the finding that "the court 'upheld the eviction' and that 'the appeal was done.' " The court took judicial notice of the appellate division's decision under the mandatory judicial notice provision in Evidence Code section 451, subdivision (a), and concluded that Harrington had demonstrated a likelihood of success on her petition for administrative mandate, because the decision "suggest[s] that the hearing officer's findings that the appeal had been completed cannot possibly be supported by the evidence." By the end of the hearing, however, the court concluded the temporary stay was unnecessary because the HA presented evidence that Harrington was no longer in possession of the apartment. After denying the motion as moot, the court set a briefing schedule and date for the hearing on Harrington's mandamus petition.

In her brief, Harrington argued that the appellate division's decision demonstrated that the hearing officer's finding that her eviction had been upheld on appeal was not supported by the evidence. In response, the HA argued that, under the "independent judgment" standard, the trial court was not bound by the hearing officer's factual findings. According to the HA, the independent judgment standard empowered the trial court to review "all of the evidence contained within the Administrative Record" to

10

"independently" determine if termination was appropriate on "any of the other grounds presented by the [HA]."

The HA argued that, in addition to the eviction, it had alleged the following three additional grounds for termination in its notice of intent to terminate: (1) failure to timely submit reexamination information; (2) failure to allow an inspection; and (3) breach of the housing quality standards. The HA further argued that the record contained evidence to support a finding that Harrington committed each of those violations. Specifically, the weight of the evidence showed that Harrington: (1) submitted her reexamination information late, because she missed the February 15, 2023 deadline and submitted her information on April 10; (2) failed to allow an inspection, because she declined the February 6, 2023 inspection due to the stress of eviction; and (3) failed to comply with the housing quality standards, because the inspector observed excessive damages and unsanitary conditions during the November 2022 inspection.

Following a hearing on the petition, the trial court issued a written decision agreeing with the HA's position. Regarding the scope of judicial review under section 1094.5, the court concluded: "Although the Hearing Officer did not specifically identify other violations as the basis for the decision, the Court must determine, based on its independent judgment, whether the weight of the evidence support[s] the Housing Authority's decision to terminate [Harrington's] housing assistance. [¶] Thus, the issue comes down to whether the administrative record supports the . . . decision . . . for the reasons/violations identified in the Notice of Intent to Terminate Assistance dated May 25, 2023, which was admitted into evidence at the administrative hearing."

11

The court found that "the weight of the evidence shows that [Harrington] failed to provide timely information for annual recertification in violation of 24 C.F.R. [parts] 981.551(b) and 982.552(c)(1)(i), . . . to allow inspectors to access the unit for annual recertification inspection in violation of 24 C.F.R. [parts] 981.551(d) and 982.552(c)(1)(i), . . . and to keep [her] unit in clean and sanitary condition." The court concluded that, because the record supported findings that Harrington violated three of the family obligations, and because the HA had alleged those violations in its notice of intent to terminate, the HA's decision to terminate was proper under the discretionary termination provision—24 C.F.R. part 982.552(c).

The court denied Harrington's petition for writ of administrative mandamus, and Harrington filed a timely appeal.

DISCUSSION

Harrington represents herself on appeal, as she did at her administrative hearing and in the trial court. In her opening brief, she focuses on the trial court's reasons for denying her petition, arguing that there is insufficient evidence that she violated three of the family obligations set out in 24 C.F.R. part 982.551 (2026). Specifically, she argues that: (1) there is no evidence that she failed to submit her annual reexamination information in a timely manner because she submitted the information in April, which was well within the suggested timeframes set out in HUD's policy manual; (2) there is no evidence that she failed to allow the annual inspection, because she rescheduled it for March and passed that inspection; and (3) there is no evidence that she failed to comply with the housing quality standards, because the appellate division held that her landlord

12

failed to demonstrate the unsanitary conditions and excessive damages cited in the November 2022 inspection. In its brief, the HA responds that substantial evidence supports each of the trial court's factual findings.

After reviewing the parties' arguments and the record, we asked the parties to brief the issue of whether the trial court misunderstood the scope of judicial review under section 1094.5 by failing to use its independent judgment to determine whether the hearing officer's factual findings were supported by the weight of the evidence. In supplemental briefs, Harrington argues, and the HA concedes, that the trial court did misunderstand the scope of its review, but the HA contends that we can nevertheless affirm the judgment. We agree with the parties that the court erred, and we conclude the error requires reversal.

A. *Judicial Review of Agency Decisions under Section 1094.5*

Section 1094.5 "governs judicial review by administrative mandate of a final decision or order rendered by an administrative agency." (*Johnson*, *supra*, 38 Cal.App.5th at p. 612.) Subdivision (b) of section 1094.5 states that the trial court's "inquiry . . . shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (§ 1094.5, subd. (b).) As relevant here, an "[a]buse of discretion is established if . . . the order or decision is not supported by the findings, *or the findings are not supported by the evidence*." (*Ibid.*, emphasis added.)

Subdivision (c) of section 1094.5 provides: "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized

13

by law to exercise its *independent judgment* on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Emphasis added.) The "independent judgment" standard applies where, as here, the interest at issue is a "fundamental vested right." (*Strumsky v. San Diego County Employees Ret. Ass'n.* (1974) 11 Cal.3d 28, 34-35 (*Strumsky*); see *Johnson*, *supra*, 38 Cal.App.5th at p. 612 [Section 8 housing assistance is a fundamental vested right].)

The independent judgment standard is less deferential to the agency's factfinding process than the substantial evidence standard. Under the latter, the trial court must draw all reasonable inferences to support the agency's factual findings and may reverse only if the findings are so lacking in evidentiary support as to render them arbitrary, capricious, or unreasonable. (*Auburn Woods I Homeowners Assn. v. Fair Employment & Housing Com.* (2004) 121 Cal.App.4th 1578, 1583.) By contrast, the independent judgment standard gives the trial court "the power to draw its own reasonable inferences from the evidence and to make its own determinations as to the credibility of the witnesses." (*Morrison v. Housing Authority of the City of Los Angeles Bd. of Comrs.* (2003) 107 Cal.App.4th 860, 868.)

The purpose of the independent judgment standard is to provide an extra layer of protection to petitioners in cases where an important right is at stake by affording less deference to the agency's decision-making process. (*Strumsky*, *supra*, 11 Cal.3d at p. 34.) As our Supreme Court explained: "When an administrative decision affects a

right which has been legitimately acquired or is otherwise 'vested,' and when that right is of a fundamental nature from the standpoint of its economic aspect or its 'effect . . . in human terms and the importance . . . to the individual in the life situation,' then a full and independent *judicial* review of that decision is indicated because '[t]he abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction.' " (*Strumsky*, at p. 34.)

B. *The Trial Court Misunderstood the Scope of Review under Section 1094.5*

Under section 1094.5, subdivision (b), the task before the trial court was to determine whether the HA's decision to terminate was supported by the hearing officer's factual findings and whether those factual findings were supported by the record. (§ 1094.5, subd. (b).) The trial court did not undertake that review. If it had, it would have necessarily concluded that the hearing officer's factual findings were not supported by the evidence and, as a result, Harrington had established an abuse of discretion under section 1094.5, subdivision (b). The record compels such a conclusion because it is undisputed that the unlawful detainer judgment—which was ultimately reversed for insufficient evidence—was still under appeal at the time of the administrative hearing. Indeed, the trial court drew that very conclusion at the hearing on Harrington's motion to temporarily stay the HA's decision.

Instead of reviewing the hearing officer's factual findings, the court concluded that the independent judgment standard authorized it to determine whether the record supported the HA's decision on any of the other grounds alleged in the notice of intent to terminate. By concluding that the weight of the evidence showed that Harrington had

violated three family obligations, the court effectively made its own factual findings to support the HA's termination decision. That was error because section 1094.5 requires a court to determine whether the agency's "decision" is "supported by the findings" and also whether those "findings" are "supported by the evidence." (§ 1094.5, subd. (b).) "Section 1094.5 clearly contemplates that at minimum, the reviewing court must determine both whether substantial evidence supports the administrative agency's findings *and* whether the findings support the agency's decision." (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514-515 (*Topanga*), emphasis added.)

As our Supreme Court has explained, when conducting the latter inquiry, the trial court's focus must be on the factual findings made in support of the agency's decision: "[I]mplicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order. . . . By focusing, instead, upon the relationships between evidence and findings and between findings and ultimate action, the Legislature sought to direct the reviewing court's attention to the analytic route the administrative agency traveled from evidence to action. In so doing, we believe that the Legislature must have contemplated that the agency would reveal this route. Reference, in section 1094.5, to the reviewing court's duty to compare the evidence and ultimate decision to '*the findings*' (italics added) we believe leaves no room for the conclusion that the Legislature would have been content to have a reviewing court speculate as to the administrative agency's basis for decision." (*Topanga*, *supra*, 11 Cal.3d at p. 515.)

The trial court's failure to review the hearing officer's factual findings for evidentiary support appears to have been based on a misunderstanding of the independent judgment standard. The trial court agreed with the HA's characterization, which was that the standard authorizes an independent review of the evidence to find support for the agency's decision. However, by concluding that the record supported three alternative grounds for termination that were not found true by the hearing officer, the trial court circumvented section 1094.5's requirement that an agency's factual findings be supported by the record. The independent judgment standard is intended to add an extra layer of judicial scrutiny to agency fact-finding, not to add more protection to the agency's legal conclusions by allowing the trial court to make its own factual findings in support of those conclusions.

For these reasons, we conclude that the trial court misunderstood the scope of its review under section 1094.5 and failed to undertake the required independent review of the hearing officer's factual findings.

C. *Reversal Is Necessary*

In its supplemental brief, the HA concedes the legal error but contends that we may nevertheless affirm the judgment. As we explain, we find each of the HA's arguments unpersuasive.

First, the HA asserts that Harrington forfeited the issue on appeal by failing to raise it in her opening brief. But the rule requiring an appellant to raise every issue in their opening brief is designed to "ensure that opposing parties are fairly apprised of contentions so as to afford a full and fair opportunity to respond." (*Golden Door*

17

*Properties*, *LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 555.) But when the *court* directs the parties to brief a particular issue, as we did here, then the briefing order necessarily ensures that the respondent is fairly apprised of the issue and has a full opportunity to respond.

We also reject the HA's argument that Harrington "invited" the error because she failed to object to the HA's characterization of the independent judgment standard in her briefing on her petition. The doctrine of invited error applies when "a party by its own conduct induces the commission of error." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212.) If any party induced the trial court's error, it was the HA, who argued for an incorrect characterization of the independent judgment standard, not Harrington. Rather, Harrington placed the issue of the hearing officer's factual findings lacking evidentiary support squarely before the trial court, both in her petition and in her briefs submitted before the hearing.

Second, the HA argues that the appellate division's decision was "inadmissible," because Harrington failed to satisfy "her burden of laying a foundation for augmenting the record with evidence of the appellate division's decision." But the foundation requirement does not apply to the introduction of state court decisions. Instead, Evidence Code section 451, subdivision (a), requires courts to take judicial notice of the "decisional . . . law of this state." By the time of the hearing on Harrington's petition, the trial court had already taken judicial notice of the appellate division's decision (at the hearing on Harrington's request for a stay) and had already concluded that the decision

18

rendered the hearing officer's finding that the eviction had been upheld on appeal "impossible."

Third, the HA contends that we can affirm the judgment because, even if there is no evidence to support the hearing officer's finding that the unlawful detainer judgment was upheld on appeal, the record contains "substantial evidence . . . sufficient for the hearing officer to reasonably conclude that [Harrington] had been evicted, mandating eviction under 24 [Code of Federal Regulations part] 982.552(b)(2)." We are not persuaded. Mandatory termination under 24 C.F.R. part 982.552(b) (2026) applies when a participant has been evicted for a "serious" lease violation. The only document in the administrative record that discusses the reason for Harrington's eviction is the landlord's notice to quit. That document bases the eviction upon a failed November 2022 inspection that purportedly revealed "excessive damages" and "unsanitary conditions," but the document does not say what the damages or conditions were. Furthermore, the appellate division held that the landlord failed to present sufficient evidence to support a finding of excessive damages or unsanitary conditions. Because the record contains no evidence to support a finding that Harrington was evicted for a serious lease violation, we cannot affirm the judgment on a finding of eviction only.

Fourth, the HA argues that the court's failure to review the hearing officer's findings for evidentiary support was harmless because the record contains substantial evidence that Harrington violated the three family obligations identified by the court, each of which, on their own, justifies termination. But as we explained above, section 1094.5 does not allow a trial court to make its own factual findings to provide alternative

19

support for an agency decision, and for good reason. "To terminate section 8 housing assistance, due process requires, among other things, timely and adequate notice of the reasons for the proposed termination and a written decision following a pretermination hearing that states the reasons for the determination and the evidence on which the decision maker relied." (*Johnson*, *supra*, 38 Cal.App.5th at p. 607.) "At the hearing, the hearing officer must determine whether the termination of benefits is in accordance with the law, federal regulations, and departmental policies and issue a written decision." (*Ibid.*) The purpose of the written decision is "to demonstrate that 'the decisionmaker's conclusion as to a recipient's eligibility . . . rest[s] solely on the legal rules and *evidence adduced at the hearing*.' " (*Ibid.*, emphasis added.)

Here, the sole focus of the administrative hearing was whether the mandatory termination provision applied to Harrington because she had been evicted for a serious lease violation. During argument, the HA's representative cited the mandatory termination regulation (24 C.F.R. § 982.552(b) (2026)) as the sole legal basis for termination and stated that, "[b]ecause of the eviction, my supervisors all agreed that it is proper to terminate rental assistance." It would violate Harrington's due process rights to uphold the HA's termination decision based on violations that were alleged in the termination notice but not placed at issue at the administrative hearing. After all, it is the hearing officer who must make the factual determinations in the first instance.

In addition to the due process violation, we also note that, based on our review of the record, we have doubts about whether the evidence would even be sufficient to support the three alleged violations of the family obligations. In her opening and reply

20

briefs, Harrington raises potentially valid arguments as to why she did not violate those obligations. At the very least, her arguments are relevant to the discretionary termination factors set out in 24 C.F.R. part 982.552(c) (2026). Because the discretionary termination was not at issue during the administrative hearing, the hearing officer did not consider those factors.

Finally, the HA argues that if we determine that the error is reversible, then the proper remedy is either to (1) "remand to the trial court to confine its independent examination to the issue of eviction" or (2) remand to the trial court "with instructions to enter an order directing the agency to clarify or make further findings." On this record, it is unnecessary to remand to the trial court to limit its analysis to "the issue of eviction" because the relevant facts are undisputed and thus there is only one conclusion the trial court could properly draw on remand. We also decline to direct the trial court to remand to the HA to clarify or make further factual findings, because that remedy is only appropriate when "[t]he absence of specific findings prevents us from fulfilling our duty under Code of Civil Procedure section 1094.5 to conduct a meaningful judicial review of the challenged administrative decisions." (*Glendale Mem'l Hosp. & Health Ctr. v. State Dep't* (2001) 91 Cal.App.4th 129, 139.) In this case, there is no absence of findings or confusion about what the findings are. The hearing officer made clear factual findings that permit judicial review.

Because it is undisputed that the hearing officer's factual findings are not supported by the record, the proper remedy is reversal with directions to grant the petition for administrative mandamus on the ground that Harrington established an abuse of

discretion under section 1094.5, subdivision (b). (§ 1094.5, subd. (b); see generally

*Topanga*, *supra*, 11 Cal.3d at p. 522; *City v. Bd. of Permit Appeals* (1989) 207

Cal.App.3d 1099, 1111.)

DISPOSITION

We reverse the order denying Harrington's petition for writ of administrative

mandamus. We remand the matter to the trial court with instructions to enter a new order

granting the petition and issuing a writ of mandamus requiring the HA to vacate its order

terminating Harrington's financial assistance. Harrington shall recover her costs on

appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

CERTIFIED FOR PUBLICATION

FIELDS _____
Acting P. J.

We concur:

MENETREZ _____
J.


LEE _____
J.

22