Filed 5/5/26  Tamayo v. City of Los Angeles CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ISMAEL TAMAYO, | B340045 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 23STCP01715 |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge. Affirmed.

Law Offices of Gregory G. Yacoubian and Gregory G. Yacoubian for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs, Supervising Assistant City Attorney, Michael M. Walsh, Deputy City Attorney for Defendants and Respondents City of Los Angeles and Michel Moore.

————————————————

Appellant Ismael Tamayo appeals from the trial court's denial of his petition for writ of administrative mandate brought pursuant to Code of Civil Procedure section 1094.5.[1] Tamayo, a former police officer for the Los Angeles Police Department (LAPD), went camping with two other LAPD officers and, after drinking heavily, shot one of the officers. Tamayo maintained that his conduct was the result of a dissociative episode caused by service-connected post-traumatic stress disorder (PTSD). The LAPD Board of Rights (the Board) found Tamayo guilty on three charges and recommended a penalty of termination, which Chief of Police Michel Moore imposed. Tamayo filed a petition for writ of administrative mandate challenging the decision by the City of Los Angeles and the Chief of Police (collectively, Respondents) to terminate his employment. He also moved to augment the administrative record. Tamayo contended that Respondents erred by applying an "objectively reasonable" standard from *Graham v. Connor* (1989) 490 U.S. 386 (*Graham*), to assess his misconduct, and that Respondents abused their discretion by imposing termination instead of an alternative remedy. The trial court denied his petition. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Facts and procedural history

#### A.     *Tamayo's military and employment background*

Tamayo was hired by LAPD as a police officer in 2006. He previously served on active duty in the United States Army between 1994 and 1998 and was deployed to Kuwait during this

---

[1]     All subsequent undesignated statutory references are to the Code of Civil Procedure.

time.  Tamayo also served with the California National Guard.  Tamayo was recalled to active duty in 2001, 2004, and 2007, and experienced combat.  In 2013, the Department of Veterans Affairs diagnosed Tamayo with "service-connected" PTSD and assigned him a total rating of 30 percent disability.

### B.  The May 2, 2020 incident

The relevant facts are undisputed.  On May 2, 2020, Tamayo, Officer Mark Mascareno, and Sergeant Javier Vega went to Apple Valley to camp and target shoot.  The officers were friends and co-workers.  Beginning around 6:30 p.m., the officers set up targets and shot various firearms.  Around 7:30 p.m., the officers ate dinner and consumed alcoholic beverages.  Tamayo estimated he had a 12-ounce beer with dinner, followed by four to six more beers and approximately six ounces of whiskey.  For several hours the officers " 'were just chatting, normal conversation, . . . laughing and just having a good old time.' "

Around 12:30 a.m. to 1:00 a.m., the officers started getting ready for bed.  Tamayo stated he needed to urinate and walked behind his truck.  He still had his semi-automatic Glock pistol on his belt.  Mascareno saw Tamayo hunched over by his truck " 'like if he had passed out standing up.' "  Mascareno asked Tamayo " [w]hy are you being so creepy over there?' "  Mascareno then saw Tamayo holding his pistol in a double-handed, " 'low ready position.' "  Tamayo repeatedly called out, " 'Get back.  Stay back.' "  Mascareno said, " 'Hey man, put your gun away.  What are you doing?' "  Tamayo shot at Mascareno three times.  The third shot hit Mascareno in the left shoulder area.

Vega yelled out to Tamayo to give him the gun.  Tamayo turned the gun on Vega and repeated " 'Mark, Javi, fall back,' " and then ran off into the desert.

3

Mascareno sought help from campers at a nearby campsite who called the San Bernardino Sheriff's Department. He was transported to a hospital for his injuries, which were not fatal.

Tamayo eventually lost consciousness. He was found by the San Bernardino County Sheriff's Department and taken into custody. Approximately nine hours after the shooting, Tamayo's blood was drawn, and his blood alcohol concentration was 0.085 percent.

### C.    Tamayo's account

According to Tamayo's testimony before the Board, he was standing behind his truck after getting up to urinate and he heard a voice he did not recognize say something threatening in a foreign language. He looked over at the fire ring and did not see Mascareno or Vega. He heard a gunshot. Tamayo testified, "[I] immediately got down on a knee, and I unholstered my pistol from my hip and I fired three rounds into that direction of that gunshot and voice, which is about, I want to say, 60 to 70 feet away."

Tamayo testified that after he shot the rounds, he thought he and his fellow officers were being ambushed so he reverted back to his military training and moved away so the enemy would not know where he was. He then blacked out and woke up on his back holding his gun and could see a police helicopter flying over the campsite.

### D.    Criminal proceedings and the Department of Veterans Affairs Rating Decision

The San Bernardino County District Attorney's Office criminally charged Tamayo with assault with a deadly weapon. The San Bernardino County Superior Court granted Tamayo's

4

petition for mental health diversion under Penal Code section 1001.36, over the District Attorney's opposition.  On April 22, 2022, the court dismissed the case against Tamayo after he successfully completed the diversion program.

In 2020, the Department of Veterans Affairs reexamined Tamayo and increased his disability from 30 percent to 70 percent.

### E.    *The Department's disciplinary proceedings*

LAPD's Use of Force Review Board (UOFRB) and the Chief of Police conducted an administrative review.  The presentation to the UOFRB did not directly address Tamayo's PTSD, however it did reference the criminal court's dismissal of Tamayo's case pursuant to a mental health diversion program.  The UOFRB and the Chief of Police both concluded that Tamayo's "actions were a substantial deviation, without justification, from approved Department tactical training."

On April 30, 2021, the Chief of Police ordered Tamayo to face the following charges before the Board:

> Count 1:  On or about May 3, 2020, you, while off-duty, utilized tactics that were found to be a substantial deviation, without justification, from approved Department tactical training, that reached a finding of Administrative Disapproval.
>
> Count 2:  On or about May 3, 2020, you, while off-duty, exhibited your firearm that resulted in a finding of Out of Policy, Administrative Disapproval.
>
> Count 3:  On or about May 3, 2020, you, while off-duty, used Lethal Force that resulted

in a finding of Out of Policy, Administrative Disapproval.

The Board held administrative hearings on multiple dates starting in May 2021. The Board heard testimony from Tamayo, Mascareno, Vega, Dr. Nadim N. Karim, a clinical and forensic psychologist retained by Tamayo, and other witnesses. The Board also admitted documentary evidence into the record, including a report by Dr. Karim, and the Department's Use of Force policy.

The Board found Tamayo guilty on all counts. The Board relied on LAPD's policies and discussed the "objectively reasonable officer" standard set forth in *Graham*, *supra*, 490 U.S. 386, which is incorporated into LAPD's use of force policies and extends to off-duty use of force. The Board concluded that Tamayo's "planning was deficient" with respect to his decision to carry a firearm while consuming "extremely large amounts of alcohol." The Board also emphasized Tamayo's testimony that he "did not, and could not, identify what he was shooting at" when he shot Mascareno, which deviated from the four basic firearm rules. Lastly, the Board noted that the evidence showed that Tamayo "was not taking fire, and was not injured in any way" when he shot Mascareno and "had ample time in this situation to take actions to de-escalate the situation and failed to do so."

Based on the totality of the circumstances, the Board recommended a penalty of termination. The Chief of Police adopted the recommendation, effective May 31, 2021.

### F.	Tamayo's mandate petition before the trial court

On May 19, 2023, Tamayo filed a petition for writ of mandate, directing Respondents to set aside the decision to terminate him.  Tamayo also moved to augment the administrative record.  On May 16, 2024, the trial court denied both the writ and the motion to augment the record.

First, the trial court addressed Tamayo's argument that he should not be found guilty of misconduct since he " 'was off-duty and not acting in his capacity as a police officer,' " and because he " 'fell into a dissociative state due to PTSD, a condition caused by trauma he experienced during his combat deployments.' "  The trial court noted that Tamayo did not discuss the administrative findings of guilt made by the Board, identify which findings he was challenging, or demonstrate with citations to the record that the Board's findings were against the weight of the evidence. (*Shenouda v. Veterinary Medical Bd.* (2018) 27 Cal.App.5th 500, 513 (*Shenouda*) [a petitioner "must identify (with citations to the record) the factual findings made by the board that he or she is challenging and demonstrate (with citations to the record) why those factual findings were against the weight of the evidence"].)  The trial court nevertheless continued to address Tamayo's "unsupported arguments."  The trial court found that Tamayo was subject to discipline for his off-duty conduct, and that his PTSD was not the exclusive cause of the incident.  Rather, the trial court upheld the Board's finding that Tamayo's "planning was deficient" with respect to his decision to carry a firearm while consuming "extremely large amounts of alcohol."  The trial court considered Tamayo's argument that his alcohol use stemmed from his mental health condition, but nevertheless

found that it did not adequately address the Board's finding, since "even if [Tamayo] could not stop himself from drinking, he could have stopped himself from carrying a firearm while he was drinking."

The trial court further found that LAPD and the Board correctly applied the objectively reasonable officer standard to Tamayo's case, despite his arguments that this standard did not apply to him because of his mental disorder. The trial court noted that Tamayo "cite[d] no legal or LAPD authority to support his argument that the *Graham* standard does not apply to an officer with a mental disorder (especially one who elected to carry a firearm while drinking heavily)." The trial court concluded that it would not create a new standard to apply, "especially one that would open the floodgates for individualized determinations of reasonableness." For the foregoing reasons, the trial court found that the weight of the evidence supported the Board's finding that Tamayo was guilty on all counts, and Tamayo failed to show a prejudicial abuse of discretion in those findings.

Next, the trial court determined that the decision to terminate Tamayo was not an abuse of discretion. Rather, the trial court found that the Board properly considered the mitigating and aggravating factors, the fact that there were no LAPD positions available for a police officer to not carry a firearm, and Dr. Karim's testimony that he would not recommend Tamayo carry a firearm if he returned to work. The trial court found that Tamayo failed to comply with LAPD's policies regarding use of a firearm, and exhibited poor judgment in carrying a firearm after consuming large amounts of alcohol, and under these circumstances, it was reasonable for Respondents to

8

conclude that " 'any discipline less than termination would not be sufficient in light of the facts and circumstances of this case.' "

Addressing Tamayo's argument that the Chief of Police " 'should have applied, on [Tamayo's] behalf, for a disability pension, pursuant to Los Angeles City Charter Section 1312,' " the trial court first noted that Tamayo did not show that he raised this issue before the Board. Moreover, citing Los Angeles City Charter section 1300, the trial court noted that this section did not apply to Tamayo since he was not hired " 'on or before January 28, 1967.' " Regardless, the trial court found that it was unclear why the Chief of Police should have applied for a disability pension on Tamayo's behalf when he himself applied for disability pension benefits on October 13, 2020, before his May 2021 hearings, and received a disability pension on March 8, 2024.

Considering the totality of the circumstances, including the " 'magnitude of the misconduct' " and the "egregious" and "reckless" nature of the incident, the trial court concluded that the Board did not abuse its discretion in terminating Tamayo.

Lastly, the trial court denied Tamayo's motion to augment the record. Tamayo sought to augment the record with two documents: (1) his application for disability pension benefits dated October 13, 2020; and (2) Findings of Fact adopted by the Board of Fire and Police Pension Commissioners (Pension Board) on March 7 and 8, 2024, regarding his application for a disability pension. The trial court found that Tamayo's application predated the Board of Rights hearing, and thus, Tamayo could have submitted this application as evidence before the Board. Moreover, the trial court found that the Pension Board's findings that Tamayo suffered from PTSD were not relevant, since they

9

were made one year after the Board of Rights hearing, and in any event, it was undisputed that Tamayo suffered from PTSD.

For the foregoing reasons, the trial court denied Tamayo's petition for a writ of administrative mandate and denied his motion to augment. Tamayo timely appealed.

## DISCUSSION

### I. Standard of review

"Section 1094.5 of the Code of Civil Procedure governs judicial review by administrative mandate of a final decision or order rendered by an administrative agency." (*Johnson v. Housing Authority of City of Oakland* (2019) 38 Cal.App.5th 603, 612.) "A trial court's review of an adjudicatory administrative decision is subject to two possible standards of review depending upon the nature of the right involved." (*Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 313.) "If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence." (*Ibid.*) "Where, as here, a case involves a police officer's vested property interest in his employment, the trial court is required to exercise its independent judgment." (*Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658 (*Barber*).) "In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)

"After the trial court has exercised its independent judgment upon the weight of the evidence, an appellate court

10

need only review the record to determine whether the trial court's findings are supported by substantial evidence." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10.) "[I]n making that determination, we must resolve all conflicts and indulge all reasonable inferences in favor of the party who prevailed in the trial court." (*Barber, supra,* 45 Cal.App.4th at p. 659.) " '[O]ur function on appellate review is solely to decide whether credible, competent evidence supports [the] court's judgment,' " and "[i]f the record contains facts to support that judgment, we must affirm." (*Shenouda, supra,* 27 Cal.App.5th at p. 512.)

On questions of law, including the interpretation of statutes, city charters, and administrative regulations, we apply our de novo standard of review. (*Molina v. Board of Administration, etc.* (2011) 200 Cal.App.4th 53, 61; *Don't Cell Our Parks v. City of San Diego* (2018) 21 Cal.App.5th 338, 350.) We also " 'review de novo whether the agency's imposition of a particular penalty on the petitioner constituted an abuse of discretion by the agency. [Citations.] But we will not disturb the agency's choice of penalty absent " 'an arbitrary, capricious or patently abusive exercise of discretion' " by the administrative agency.' [Citation.]" (*Bedard v. City of Los Angeles* (2024) 106 Cal.App.5th 442, 454.)

## II. Tamayo waived any argument challenging the sufficiency of the evidence supporting the trial court's findings of guilt

As an initial matter, Respondents correctly note and Tamayo concedes in his reply brief that he has not challenged the trial court's finding that the weight of the evidence supports the administrative findings of guilt on all three charges. Since Tamayo failed to make this argument in the Board proceedings or

11

before the trial court, he has abandoned it.  (*Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 587 [contention not raised at the administrative hearing or in the trial court is forfeited]; *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 (*Golden Door Properties*) [" ' "Issues not raised in an appellant's brief are deemed waived or abandoned" ' "].)

## III.  The trial court did not err in concluding that Respondents correctly applied LAPD's policies

Instead of challenging the sufficiency of the evidence of the charges against him, Tamayo argues that Respondents erred by applying LAPD's policies to him.  Specifically, Tamayo argues: (1) Respondents cannot hold a police officer accountable for off-duty misconduct if the officer is not exercising his police powers to effect an arrest or seizure; and (2) the reasonable officer standard set forth in *Graham* is inapplicable when an officer is in a dissociative state, because he is not capable of acting rationally.  We conclude that both arguments lack merit.

First, we find that the trial court correctly concluded that it is well-established that "police officers may be disciplined for off-duty misconduct that has a reasonable nexus to their public employment."  (See *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 571–572 ["[W]hile the off-duty conduct of employees is generally of no legal consequence to their employers, . . . [t]o maintain the public's confidence in its police force, a law enforcement agency must promptly, thoroughly, and fairly investigate allegations of officer misconduct; [and] if warranted, it must institute disciplinary proceedings"]; *Hankla v. Long Beach Civil Service Com.* (1995) 34 Cal.App.4th 1216, 1223 [finding civil service commission abused its discretion by

reinstating a police officer, where the officer, while off-duty, negligently shot and nearly killed the driver of another vehicle following a dispute over a trivial driving incident]; *Anderson v. State Personnel Bd.* (1987) 194 Cal.App.3d 761, 772 [upholding dismissal of off-duty officer who engaged in repeated acts of public nudity]; *Gray v. State Personnel Bd.* (1985) 166 Cal.App.3d 1229 [upholding dismissal of off-duty officer who accosted and threatened to shoot a male visiting his ex-girlfriend]; *Cranston v. City of Richmond* (1985) 40 Cal.3d 755, 760, 771 [upholding discharge of off-duty police officer who led fellow police officers and highway patrol car on high speed chase].)

Second, we conclude that the trial court correctly determined that Respondents did not err in applying the "objectively reasonable" officer standard to Tamayo's misconduct. The LAPD use of force policy in place at the time of Tamayo's conduct provides: "when warranted, Department personnel may use objectively reasonable force to carry out their duties." To determine "objective reasonableness," LAPD applies the definition from *Graham*, which states, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene . . . ." LAPD's use of force policy does not set forth any separate standards to apply for officers with mental disorders or impaired judgment. Pertinent to the instant case, LAPD issued a training bulletin in August 2017 stating officers "who get involved in a use of force while off duty are subject to the same objectively reasonable standard used to adjudicate on-duty uses of force." As the trial court noted, Tamayo did not cite any "legal or LAPD authority in support of his argument that the *Graham* standard does not apply to an

13

officer with a mental disorder (especially one who elected to carry a firearm while drinking heavily)." Tamayo still fails to do so.

Furthermore, we decline Tamayo's suggestion to apply a criminal insanity defense to his administrative hearing to exonerate him from misconduct. Crucially, LAPD's use of force policy does not consider an officer's mental state and does not allow for an insanity defense. Moreover, Tamayo does not cite any legal or regulatory authority to support his argument that a criminal standard determining legal insanity should apply to an administrative hearing which focuses on civil/regulatory misconduct.

## IV. Tamayo waived any challenge to Respondent's decision to terminate

The trial court found that the weight of the evidence supported Respondent's decision to terminate Tamayo, and therefore Respondents did not abuse their discretion. Tamayo does not challenge this finding. That is, he does not make or support any argument that the termination penalty was not in the range of allowable discipline or was an abuse of discretion. He has therefore waived this challenge. (*Golden Door Properties, supra,* 50 Cal.App.5th at p. 555.) Tamayo instead argues that termination was not the appropriate punishment and that Respondents "should have chosen options other than disciplinary action, such as a disability pension." However, "[t]he penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated. [Citations.]" (*Barber v. State Personnel Board* (1976) 18 Cal.3d 395, 404.) "Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment

14

imposed. [Citation.]" (*Ibid.*) Since Tamayo fails to argue, let alone demonstrate an abuse of discretion in Respondent's disciplinary actions we will not disturb the trial court's decision with respect to their decision to terminate.

## V.     Tamayo waived any challenge to the trial court's decision not to augment the record

Lastly, Tamayo's opening brief does not challenge the trial court's decision not to augment the record with documents related to his application for disability pension benefits. He has accordingly forfeited this issue. (*Golden Door Properties, supra,* 50 Cal.App.5th at p. 555.) Instead, in his opening brief, Tamayo renews his request to augment the record "for the purpose of showing the extent of the relief he would receive should he prevail in his appeal." He explains that if we decide this appeal in his favor, he will "receive backpay from approximately May 31, 2021, the date he was relieved of duty, to approximately January 18, 2024, the date he was awarded a disability pension." However, because we conclude that Tamayo's petition for a writ of administrative mandate was properly denied, there is no reason to augment the record since Tamayo has not prevailed on his appeal. Accordingly, we deny Tamayo's second request to augment the record. (*Steele v. International Air Race Association of America* (1941) 47 Cal.App.2d 61, 63 [reviewing courts will not order documents to be added to the record "except on a showing that they are material to and will assist in a determination of the appeal on its merits"].) We also deny Tamayo's request for a writ of mandate to reinstate his employment and backpay, since he has failed to prevail on his appeal.

15

## DISPOSITION

We affirm the judgment.  Respondents shall recover their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

HANASONO, J.

We concur:

EGERTON, Acting P. J.

ADAMS, J.